**William Leroy DUNAWAY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1281S381.

Supreme Court of Indiana.

Oct. 22, 1982.

**684**

Jack Quirk, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, William LeRoy Dunaway, was convicted by a jury of murder, Ind. Code § 35–42–1–1 (Burns 1979 Repl.) and was sentenced to the Indiana Department of Correction for a term of sixty years. He raises the following six issues in this direct appeal:

1. Whether the trial court erred in overruling defendant's motions to suppress and subsequently admitting his written confession;

2. Whether the trial court erred in allowing testimony of a statement made by the decedent over defendant's objection;

3. Whether the trial court erred in admitting certain photographs of the decedent;

4. Whether the trial court erred in admitting testimony about a substance which appeared to be blood but was not specifically identified;

5. Whether the trial court erred in not allowing defendant to present testimony of other rapes which occurred in the vicinity of the instant crime and for which another individual had been arrested; and

6. Whether the verdict was supported by sufficient evidence on all the elements of the crime as charged.

A summary of the facts from the record most favorable to the state shows that the victim, Debra Stough, went with two friends, Brenda and Shirley James, to see a fireworks show in Richmond, Indiana, on July 4, 1980. The three girls returned to Debra's home and defendant stopped by to see them about 11:00 p. m. that evening. They sat on the porch drinking beer and then defendant and Shirley James left to get more beer. Shirley testified that they drove out to a reservoir where defendant made advances toward her. She refused defendant and they returned to Debra's house. Debra's mother, Beatrice Allen, who was also at the house at this time, testified that Debra told her she did not want to be left alone with defendant.

Eventually, Debra's mother and the James sisters left and Debra went inside her house to fix a bottle for her baby. Defendant followed her into the kitchen and they engaged in sex. Debra then began to argue with defendant and attempted to hit him. Defendant struck her with his hand and then pulled out his knife, stabbed her and slashed her throat in two places. His clothes and shoes were bloodstained, so he went to his mother's house where he changed into some clean clothes. He took the bloodstained clothes and shoes with him and drove to his uncle's property in Oxford, Ohio.

Defendant's uncle was camping on this property and testified that defendant knocked on his camper door about 4:00 a. m. on the morning of July 5, 1980. Defendant talked with his uncle for a few minutes and said he had been in a fight and wanted to burn some clothes in the campfire. He was also going to burn his knife but his uncle said he would take the knife. His uncle then went back in his camper and did not actually see defendant burn his clothes. Defendant returned to his own house in Richmond around noon on July 5, 1980. Two police officers came to his house later that afternoon and said that they wanted to question him. Defendant accompanied them to the police station and later that afternoon signed a written statement admitting to the murder of Debra Stough.

## I.

Defendant first contends that the trial court erred by overruling his motions to suppress his inculpatory statement given to the police at the police station on the afternoon of July 5, 1980. He argues that this statement was given after he was illegally arrested without probable cause. Furthermore, he argues that he was so intoxicated at the time that he could not have made a knowing and voluntary waiver of his rights.

It is clear that if a confession is the product of an unlawful detention or an illegal arrest it is inadmissible. *Dunaway v. New York,* (1979) 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824; *Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416; *Triplett v. State,* (1982) Ind., 437 N.E.2d 468; *Morris v. State,* (1980) Ind., 399 N.E.2d 740. However, it is also clear that not every police-citizen encounter amounts to a "seizure" of the person so that an arrest or unlawful detention has occurred. The test for determining whether a person has been "seized" for Fourth Amendment purposes is whether, considering all the circumstances surrounding the police-citizen encounter, the defendant entertained a reasonable belief that he was not free to leave. *United States v. Mendenhall,* (1980) 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (plurality opinion); *Barber v. State,* (1981) Ind.App., 418 N.E.2d 563.

As a court of review, we review the question of the admissibility of a confession as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's finding. This is true even though conflicting evidence is presented on the issue of voluntariness. *Long v. State,* (1981) Ind., 422 N.E.2d 284; *Battle v. State,* (1981) Ind., 415 N.E.2d 39, *Arch v. State,* (1978) 269 Ind. 450, 381 N.E.2d 465.

In the instant case, the facts are sufficient to show that defendant voluntarily accompanied the officers to the police station. The record shows that two officers went to defendant's home on the afternoon of July 5, 1980. They knocked on the door and were invited to come inside. They asked defendant to accompany them to the police station for questioning. No weapons were drawn and defendant was not handcuffed. Defendant rode to the police station in the front seat of the police car. At the station he talked with one policeman, Officer Bratton, who had been his friend for several years as well as with other officers. He was given a soft drink during the period of questioning. He was read a statement of his *Miranda* rights and signed the rights form before any questioning started. Defendant had been involved with police on prior occasions and stated that he did understand his rights. He stated that he wanted to talk about the incident because he "wanted to get it off his conscience." His statement was completed in a little over an hour. One of the police officers testified that after defendant finished giving his statement he asked to see his girlfriend "before he was arrested and taken to the county jail." While it is true that defendant was not specifically informed at his home that he was not under arrest, no physical restraints were used. His previous experience with the law, his friendship with Officer Bratton, and his request to see his girlfriend "before he was arrested" all support the conclusion that he did not believe he was under arrest when he was transported to police headquarters. We find there was sufficient evidence here to support the trial court's finding that defendant's confession was not the product of an illegal arrest.

Defendant next alleges that his confession was not voluntarily given because he was too intoxicated at the time he gave his statement to make a knowing and voluntary waiver of his rights. On this issue, also, we are limited to a determination of whether there was sufficient evidence to support the trial court's conclusion. There is uncontested evidence that defendant was drinking throughout the day on July 4, 1980. However, three experienced police officers testified about defendant's appearance and actions at the police station on the

next day, July 5, 1980, and all stated that defendant was sober at that time. They testified that defendant appeared clean and composed, walked in a normal manner without a stagger, and that his speech was coherent. There was no odor of alcoholic beverages on defendant. It is uncontested that defendant was properly advised of his *Miranda* rights and stated that he understood them prior to all questioning. We find that this was substantial evidence to support the trial court's finding of a voluntary confession.

### II.

Defendant next contends that the trial court erred in allowing Debra's mother to testify about some remarks Debra made on the evening of the crime. Beatrice Allen was allowed to testify, over defendant's hearsay objection, about what her daughter said to her while they were inside the house and defendant was out on the porch. Mrs. Allen testified about what Debra had said:

> " 'Mom,' she says, 'Don't leave us.' I said, 'Why.' She says, 'I just don't want Billy around me.' She said, 'Make him leave.' I said, 'What's wrong?' She said, 'I just don't want him around me.' She said, 'There's something about him tonight. I just don't want him around me.' "

■ Hearsay evidence is testimony by a witness in court relative to an out-of-court declaration by another which is offered to prove the truth of the facts asserted by the declarant. *Morse v. State,* (1980) Ind., 413 N.E.2d 885; *Roberts v. State,* (1978) 268 Ind. 348, 375 N.E.2d 215. Debra's statements here were not offered for the truth of the matters they contained, but were offered to show her state of mind prior to the crime. The statements indicate a fearful state of mind which would circumstantially explain her later action of attempting to hit defendant. *See Morse v. State, supra,* and cases cited therein. There was no error in the admission of this testimony.

### III.

■ Defendant next asserts that the trial court erred in admitting Debra's high school

picture and another picture which showed her holding her child. However, the record shows that Mrs. Allen testified about both her daughter, Debra, and Debra's little girl as Mrs. Allen had been babysitting with the child on the night of the crime. It is well settled that photographs are properly admissible when testimony concerning that which they depict would be proper. *Clemons v. State,* (1981) Ind., 424 N.E.2d 113; *Rogers v. State,* (1979) 270 Ind. 189, 383 N.E.2d 1035; *White v. State,* (1978) 269 Ind. 479, 381 N.E.2d 481. There was no error in the admission of these photographs.

### IV.

■ Defendant next contends that the trial court erred in allowing one witness to testify that a substance on the knife looked like blood. However, this contention is not supported by cogent argument or citation to authority and is therefore waived. *Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798; *Loeb v. Loeb,* (1973) 261 Ind. 193, 301 N.E.2d 349.

### V.

■ Defendant contends that the trial court erred in limiting his cross-examination of one of the police officers. During his cross-examination of Detective Denzel Williams, defense counsel asked the officer if he knew an individual named Danny Pendley. The state objected on the basis of relevancy and the court sustained this objection. In defendant's offer to prove, he stated that he would have shown that around the time of the instant crime, a series of rapes had occurred in the victim's neighborhood. The perpetrator of those other forcible rapes had used a knife. Danny Pendley was the individual who was arrested and charged with those rapes. However, there was no evidence connecting Pendley with the instant crime. There was testimony during the trial by one of the James sisters that she saw a "big built guy" go up the front stairs of Debra's house. She yelled at him and he "took off real fast." Defendant's theory was that this

evidence about the other rapes in the neighborhood was relevant to show that it was possible Pendley had committed the instant crime.

It is well settled in this state that the trial court has wide discretion in ruling on the relevancy of evidence in a criminal proceeding. *Turpin v. State,* (1980) Ind., 400 N.E.2d 1119; *Williams v. State,* (1979) 270 Ind. 573, 387 N.E.2d 1317; *Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743. We find no error in the refusal to admit evidence of the other rapes in this case since any connection to the instant crime was highly conjectural and speculative.

## VI.

Defendant finally contends that there was insufficient evidence to show that there was an act of criminal deviate conduct committed. This argument is moot since the charge of committing murder while performing an act of criminal deviate conduct was only contained in Count II of the charging information in which the state was seeking the death penalty for defendant pursuant to Ind.Code § 35–50–2–9(b)(1) (Burns 1979 Repl.). The jury in this case found defendant guilty of murder, but did not return a recommendation of the death penalty and the trial court did not impose the death penalty.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and PIVARNIK, J., concur.

DeBRULER and PRENTICE, JJ., concur in result.