David **GARRETT**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 784 S 287.

Supreme Court of Indiana.

July 24, 1984.

Rehearing Denied Sept. 12, 1984.

⊂⊃394.4(3)

Jack R. Shields, Batesville, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant David Garrett was convicted of the theft of a motorcycle in the Decatur Circuit Court. He subsequently appealed that conviction claiming that the trial court erred in refusing to grant his motion to suppress certain evidence. The First District Court of Appeals, Judge Neal dissenting, held that the trial court should have granted Appellant's motion to suppress and accordingly reversed his conviction and remanded his cause for a new trial. We now hold that the Court of Appeals did not properly decide this case and accordingly vacate the opinion of the Court of Appeals and affirm the trial court.

The facts adduced during trial show that on July 29, 1982, police officers Huser and Blodgett of the Greensburg City Police were on patrol in a residential neighborhood. At approximately 4:00 a.m., they

approached a van traveling in the opposite direction and noted some movement in the van as though one of the occupants had just returned to the front passenger seat from the rear. As the vehicles passed each other, the occupants of the van appeared startled when they saw the police officers. The officers radioed to check the van's registration since they did not recognize the van's occupants and noted that it had out of county license plates. They also turned around to follow the vehicle pending the dispatcher's report that the vehicle had not been stolen. The officers were no longer able to see the van along the main thoroughfare, however, and turned down several side streets until they saw it parked in a private driveway. A minute to a minute and one-half elapsed between the time the officers lost sight of the van to the time they rediscovered it in the driveway. Officer Huser lived within two blocks of the residence by which the van was parked and was aware that the residence belonged to Dave McHenry. Huser also was aware that there had been a number of burglaries and incidents of vandalism in the neighborhood. There was a rental unit in the garage of the McHenry property but Huser did not know who lived there. He had never seen this van at the McHenry residence before, however, and both officers noted that there were no lights on in either the house or the garage unit to indicate that the occupants of the van were visiting either.

The van was approximately ten to fifteen feet from the street. The officers left their automobile and approached the van from both sides assuming that the occupants were still inside. Huser shined his flashlight into the driver's compartment but found it empty. The keys were still in the ignition switch. Since the driver's compartment was separated from the cargo hold by a partially drawn curtain, they then shined their lights into the cargo hold to determine whether anyone was in the rear of the van. Instead of revealing any occupants, however, the light exposed the front fender of a Harley-Davidson motorcycle. Through the back window, the cycle's license plate could be read. Officer Huser recognized the cycle as being the property of Mr. Cornn who also lived in the neighborhood and a radio check revealed that the motorcycle belonged to Cornn and had been stolen. No one was in the van. A subsequent search of the neighborhood produced Appellant Garrett who was attempting to leave town on foot. He confessed that morning to having stolen the motorcycle. The evidence also shows that at the time of this incident, Stephen Lacefield was renting the apartment in the McHenry garage. Lacefield had seen Appellant at approximately 1:00 that morning and had told him that he could park his van in the driveway and sleep in it. Lacefield did not see Appellant anytime later that morning and had no knowledge of what transpired around 4:00 a.m. in front of the residence.

To decide whether the trial court properly denied Appellant's motion to suppress, we must consider the following three issues: 1. whether the police had reasonable grounds to investigate the van; 2. whether the police had a right to be on the McHenry property; and 3. whether the discovery of the stolen motorcycle falls within the "plain view" doctrine so that testimony about it was admissible without violating Appellant's Fourth Amendment rights.

I

We first consider the reasonableness of the police in determining that an investigation of the van was necessary. It has been established that police have a right to make an investigatory stop of a vehicle or of an individual on foot if, at the time of such stop, a man of reasonable caution would believe that further investigation was appropriate. It is not necessary that police have probable cause for an arrest when making such an investigatory stop. The reasonableness of the warrantless intrusion depends upon specifically articulable facts and reasonable inferences from those facts which warrant the suspicion of unlawful conduct. This standard

was established by *Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

In *Terry,* a police officer observed John Terry and another person confer on a street corner, individually walk past a certain store pausing to look in the store's window, and then turn and follow the same procedure back to the street corner. The two repeated this activity five or six times apiece. It was the opinion of the police officer who watched this activity, based upon his long experience in police work, that Terry and the other were "casing" the store for a break-in and that further investigation was required. He therefore approached the men and questioned them about their identities. Fearing that the men were armed, the officer also frisked them and found Terry to have illegal weapons in his possession. Terry was charged and convicted. He subsequently appealed said conviction claiming that the presence of the illegal weapons on his person was discovered through an illegal search and seizure. The overruling of Terry's motion to suppress by the trial court was affirmed by the United States Supreme Court holding that the search was reasonable under the Fourth Amendment and that the revolver seized from Terry was properly introduced into evidence. The Supreme Court so held since the police officer had reasonably concluded, based on his experience, that criminal activity might be afoot and that the persons with whom he was dealing might be armed and presently dangerous. The Supreme Court specifically held that the Constitution does not forbid all searches and seizures but only unreasonable ones.

This Court has held that the stopping of a pick-up truck at 5:00 a.m. was warranted when the truck was strange to the area, was proceeding down a country road at a peculiarly slow speed, was carrying a new riding mower in the back and the arresting officer had a vague recollection of recent mower thefts. *Rutledge v. State,* (1981) Ind., 426 N.E.2d 638, *reh. denied.* This Court also has held that police were justified in making an investigatory stop and a weapons frisk of a person who was alone in the vicinity of a reported break-in at 3:37 a.m. and was moving in a direction away from the crime while still on the same side of the street. The person told police that he had been visiting a friend in the neighborhood but was unable to give the friend's name or address and generally was uncooperative with the police. *Green v. State,* (1984) Ind., 461 N.E.2d 108. *See also Mayfield v. State,* (1980) Ind.App., 402 N.E.2d 1301, *trans. denied.* The facts in the instant case clearly indicate that Officers Huser and Blodgett knew of specifically articulable facts and reasonable inferences therefrom which warranted them to reasonably believe that further investigation of those using the van was appropriate. There was no error on this issue.

II

The next question pertains to the right of the police officers to go upon McHenry's private property and investigate the van parked in his driveway. When they entered upon the property, the police had not only the suspicious facts outlined above to merit their investigation but also the additional facts that this van was parked in a driveway where the officers thought it was out of place and that no activity was seen indicating a legitimate purpose for its being there. The police officers testified that they approached the van to question its occupants about what they were doing in that particular driveway. Officer Huser specifically testified that he expected people to be in the van and that his purpose in approaching it was to find out why they were there. He stated that if the occupants had told him that they were visiting someone, then he would have checked that out and left. At this point, the officers did not approach the van to search it for evidence of a crime since they did not have knowledge at that time that a crime had been committed. At this point, the officers were rightfully upon McHenry's property to check the vehicle and occupants they had just observed on the public street. The officers approached the van from both

sides as a precaution to protect themselves. They flashed a light inside the vehicle expecting to see people inside but instead saw the motorcycle.

We now find that the police officers had the same right to go onto McHenry's private property to check the van and occupants as they had when they observed the van on public streets. Appellant has no standing to challenge the presence of the officers on this property since he was not an owner or tenant of the property and was not legitimately on the premises when the officers approached. Appellant had no possessory interest in the property nor could he have had any legitimate expectation of privacy in the premises. The only connection Appellant had with the property was the permission of a tenant to park his van there to sleep. Appellant obviously did not park there to sleep since he left the premises and was found attempting to walk back to Muncie. Appellant therefore had no standing to challenge the presence of the officers on McHenry's premises. *Pollard v. State*, (1979) 270 Ind. 599, 388 N.E.2d 496; *Barnes v. State*, (1978) 269 Ind. 76, 378 N.E.2d 839. There was no error on this issue.

### III

The remaining issue to resolve is whether the discovery of the stolen motorcycle falls within the "plain view" doctrine. The doctrine provides that a police officer who inadvertently discovers items of readily apparent criminality while rightfully occupying a particular location may properly seize the items. Evidence so seized is both admissible as evidence and usable for derivative purposes. *Lance v. State*, (1981) Ind., 425 N.E.2d 77; *see Coolidge v. New Hampshire*, (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. We already have established that Officers Huser and Blodgett were in a place they had a right to be. Moreover, the facts show that they shined their lights into the vehicle to determine whether anyone was still therein which was necessary not only to determine the purpose of their presence but also to protect the safety of the officers. In so checking, the officers discovered the stolen motorcycle.

The seizure of property fitting within the requirements of the "plain view" doctrine is not the result of a search within the meaning of the Fourth Amendment. This Court has discussed the law on the doctrine as follows:

"Under this rule, evidence concerning that which is in plain view is not the product of a search. *United States v. Barone* (2 Cir., 1964), 330 F.2d 543; *Koscielski v. State*, (1927), 199 Ind. 546, 158 N.E. 902.

' * * * (T)he word "search" connotes uncovering that which is hidden, prying into hidden places for that which is concealed. It is not a search to observe what is open to view.' *McDonald v. United States* (1948), 83 U.S.App.D.C. 96, 166 F.2d 957.

In *Marshall v. United States* (1970), 422 F.2d 185, the 5th Circuit Court of Appeals stated that:

'A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest. *Haerr v. United States*, 5 Cir.1957, 240 F.2d 533, 535.'

In the case at bar there was no evidence of a 'prying into hidden places for that which is concealed,' or of an exploratory quest. Sergeant Shaw stated that while he was standing alongside appellant's car checking the latter's driver's license he, at the same time, '*glanced* in the back seat on the floor board' with his flashlight. (Emphasis supplied; Tr. p. 97.). By doing so, he observed the cartons of cigarettes, bakery goods, and bottles of liquor above referred to.

'We do not hold, of course, that every use of a flashlight is not a search. A probing, exploratory quest for evidence of crime is a search governed by Fourth Amendment standards whether a flashlight is used or not. The mere use of a

flashlight, however, does not magically transmute a non-accusatory visual encounter into a Fourth Amendment search. When the circumstances of a particular case are such that the police officer's observation would not have constituted a search had it occurred in daylight, then the fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search. Regardless of the time of day or night, the plain view rule must be upheld where the viewer is rightfully positioned, seeing through eyes that are neither accusatory nor criminally investigatory. The plain view rule does not go into hibernation at sunset.' *Marshall v. United States,* supra."

*Alcorn v. State,* (1970) 255 Ind. 491, 496, 265 N.E.2d 413, 416. *See also Cochran v. State,* (1981) Ind.App., 429 N.E.2d 672. A third requirement in *Coolidge, supra,* is that it be immediately apparent to the police that the item is contraband, evidence of a crime, or otherwise subject to seizure. Under this requirement an officer must have probable cause to associate the property with criminal activity. *Texas v. Brown,* (1983) 460 U.S. 730, ——, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502, 510 (citations omitted).

█ Here Officer Huser testified that he knew there had been a number of burglaries in the area and recognized the cycle as being the property of an area resident. These facts were sufficient to warrant a man of reasonable caution to believe the item was contraband. Accordingly, we now find that the discovery of the motorcycle falls within the ambit of the "plain view" doctrine.

After Officers Huser and Blodgett discovered the motorcycle, including its license plate, through the window, they determined by radio communication that the motorcycle had been stolen. They then had the owner come to the scene and identify, through the window, his motorcycle before they removed it from the van with other items found therein. They subsequently apprehended Appellant some distance from the scene while on foot and trying to find his way back to Muncie. We now find that the trial court properly denied Appellant's motion to suppress all of this evidence.

The opinion of the Court of Appeals is vacated and the trial court is in all things affirmed.

GIVAN, C.J., and PRENTICE, J., concur.

DeBRULER and HUNTER, JJ., concur in result.