STATE of Indiana, Appellant
(Plaintiff Below),

v.

Wayne Lee THRALL, Appellee
(Defendant Below).

No. 1-784A179.

Court of Appeals of Indiana,
First District.

Nov. 14, 1984.

Rehearing Denied Dec. 17, 1984.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant.

Susan K. Carpenter, Public Defender of Ind., Sheila K. Zwickey, Deputy Public Defender, Indianapolis, for appellee.

ROBERTSON, Judge.

This is an appeal by the State of Indiana from the granting of Wayne Lee Thrall's (Thrall) motion to suppress all evidence obtained from his statement to the police.

We affirm.

On September 24, 1983, the Rush County Sheriff's office received a report of an attempted breaking and entering and theft at the Tower Motel on Indiana 44, west of Rushville. The next day, State Police Trooper, Michael Bare (Bare) received a dispatch that a telephone caller had stated that the person seen performing the theft at the Tower Motel was walking west on Indiana 44. Bare picked Thrall up and drove him to Mac's Restaurant in Shelbyville. Bare started to return to Rush County, but then decided to ask Thrall some questions about the theft. He asked Thrall to accompany him back to Rushville, which Thrall did without restraint.

After returning to the station, Thrall was asked to wait in the lobby while Officer Duane Raab, (Raab) the officer who had investigated the break-in at the Tower Motel, was contacted. When Raab arrived at the station, he and Bare took Thrall into a conference room for questioning. The conference room was located in a secured portion of the jail, beyond two locked metal doors. No one told Thrall that he could leave. After being advised of his *Miranda* rights, Thrall signed a written waiver and gave a statement implicating himself in the Tower Motel break-in. He was then formally arrested and charged by information on September 27, 1983, with Burglary, a class C felony.

On December 8, 1983, Thrall filed his motion to suppress all evidence obtained from his statement to the police. In his motion, Thrall argued that custodial questioning on less than probable cause for arrest violates a person's Fourth Amendment rights and that such violation is not cured by giving the *Miranda* warnings.

The State argued that Thrall was not in a custodial position until after he made his statement to the police because he voluntarily accompanied Bare to the jail for questioning. Consequently, his Fourth Amendment rights did not come into play until the time he was formally charged. On March 20, 1984, the trial court granted Thrall's motion to suppress, thus, precluding further prosecution. The question on appeal is whether Thrall had been "seized" as contemplated by the Fourth Amendment.

Our supreme court in *Dillon v. State,* (1983) Ind., 454 N.E.2d 845, 851 set forth the law in Indiana regarding this issue:

It is clear that if a confession is the product of an unlawful detention or an illegal arrest it is inadmissible. *Dunaway v. New York,* (1979) 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824; *Brown v. Illinois,* (1975) 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416. *Triplett v. State,* (1982) Ind., 437 N.E.2d 468; *Morris v. State,* (1980) [272] Ind. [467], 399 N.E.2d 740. However, it is also clear that not every police-citizen encounter amounts to a "seizure" of the person so that an arrest or unlawful detention has occurred. *The test for determining whether a person has been "seized" for Fourth Amendment purposes is whether, considering all the circumstances surrounding the police-citizen encounter, the defendant entertained a reasonable belief that he was not free to leave. Dunaway v. State,* (1982) Ind., 440 N.E.2d 682; *United States v. Mendenhall,* (1980) 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (plurality opinion);

*Barber v. State,* (1981) Ind.App., 418 N.E.2d 563.

 In his brief, Thrall does a good job of setting forth the circumstances leading up to his arrest. They are as follows:

1) Thrall was requested to accompany Indiana State Police Officer Mike Bare to the Rush County Jail, after observing Thrall walking on Highway 44, based on an anonymous tip that: the person who committed a theft the day before" could be found there.

2) Bare does not recall telling Thrall he did not have to accompany him to the jail, that he had to stay in the lobby, or that he was free to go.

3) Thrall was eventually taken to a conference room after waiting unrestrained in the jail lobby for between 30 and 45 minutes.

4) The conference room was located in the secured area of the jail, beyond two (2) locked metal doors.

5) There were other rooms available to use that were not in the secured area.

6) Thrall was not told he was free to leave the secured conference room.

7) Thrall testified he was never told he was free to leave, he believed he could not leave the lobby and he believed he had to accompany Officer Bare to the jail or he would have been arrested.

9) In addition, Thrall did not believe he could leave the locked conference room.

Clearly, this is not a situation where Thrall went to the police station on his own or where he knew the police officers involved. Thrall testified that he did not know if he was locked in the police car and that he "volunteered" to come back because he believed a refusal would lead to his being placed under temporary arrest to be brought back by force. The circumstances indicate that Thrall was in fact, "seized" during the time he was questioned about the burglary.

 We now examine the evidence to determine at what time the police had probable cause to arrest Thrall. The facts show that he was picked up as a result of an anonymous tip that the person involved in the Tower Motel theft was seen walking along Highway 44. The officer drove Thrall to a restaurant in Shelbyville during which time they had a lengthy conversation. The officer's decision to go back to the restaurant and ask Thrall to accompany him to the jail was based solely on the similarity of Thrall's name and that given by the anonymous tipster. Thrall's description does not even match the description of the person seen burglarizing the Tower Motel.

As a result of Thrall's interrogation, the police learned of a theft and were advised where to find the stolen items. They further learned of a burglary for which Thrall is now charged. Thus, probable cause to arrest Thrall did not exist prior to his interrogation. There was no probable cause to charge him with any crime, he was not under arrest, but was "in custody" for purposes of the Fourth Amendment. Consequently, the trial court was correct in ordering the suppression of all evidence obtained during Thrall's custodial interrogation.

We find sufficient evidence to support the decision of the trial court.

Judgment affirmed.

NEAL, P.J., and RATLIFF, J., concur.