**Anthony HAMLET and Thomas Gunn, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 784S286.**

Supreme Court of Indiana.

March 26, 1986.

Barrie C. Tremper, Chief Public Defender, Charles F. Leonard, Deputy Public Defender, Fort Wayne, for appellants.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Anthony Hamlet and Thomas Gunn were each found guilty of robbery, a class B felony, and determined to be habitual offenders. The trial judge sentenced each of them to a term of fifty (50) years.

Three issues are presented for our consideration in this direct appeal as follows:

1. unlawful arrest of Appellants by law enforcement officers without a duly authorized arrest warrant nor sufficient probable cause and denial of a motion to suppress items taken from the persons of Appellants incidental to an illegal arrest;

2. impermissibly suggestive out-of-court confrontation requiring suppression of out-of-court and in-court identification by witnesses; and

3. sufficiency of the evidence.

On June 18, 1983, at about 9:00 p.m., a Wendy's Restaurant at Broadway St. and Bluffton Rd., in Fort Wayne, Indiana, was robbed. Michelle Davidson stated she was standing in the back of the restaurant near the office in a well-lighted area. Two black men with nylons pulled over their faces walked by. These two men committed the robbery by ordering seven employees and customers into the office and ordering them to lie face down on the floor. One of the robbers was tall and slender and the other was short with a stocky build. The shorter man carried a handgun. The tall robber ordered Davidson to get up and open the cash registers, which she did while both of the men pointed guns at her. She opened three different registers. Charles Cooper, the assistant manager of the store, was also in the office when the masked individuals arrived. He volunteered to open the safe which he said contained fifteen hundred ($1500.00) dollars. After unlocking the safe, Cooper returned to the office floor. Cooper and Davidson both observed that one of the men was tall, slender and black, and the other was also black but short and stockily built.

Fort Wayne law enforcement officers were alerted that the robbery had occurred and Officer Sorgan arrived at the Wendy's Restaurant around 9:20 p.m. After receiving descriptions from the victims of the robbery, Sorgan broadcast a description of the suspects over the police radio. The shorter man was also described as having a goatee. Among the officers receiving the report and responding was Officer Meeks who, with another officer in his vehicle, proceeded to a location seven or eight blocks from the Wendy's Restaurant and described as 418 Rudisill Street. Meeks' went to this location because the description of the robbers described Appellants Anthony Hamlet and Thomas Gunn, who were known to keep company with William Trigg, and who were suspected of committing other robberies in the area in similar fashion to this one. William Trigg also dated the owner of the apartment building at 418 Rudisill Street and it was known that Trigg, Hamlet, and Gunn frequented this address. Meeks and other Fort Wayne police officers had been informed by Jerry Arrington and other "street" sources that the appellants had been involved in previous robberies including one at Video World. A certain green Lincoln automobile was seen at the scene of two previous robberies and it was known that this vehicle belonged to and was driven by William Trigg.

As Meeks approached the above address he received a dispatch from other officers that the Lincoln automobile in question had been located near 418 Rudisill Street, and that the engine was warm and a pistol holster was observed inside the vehicle. As Meeks approached 418 Rudisill Street, he questioned a woman and a man seated in a car, identifying themselves as Eddie Arrington and Brenda Rogers. Meeks knew Eddie Arrington was a brother of informant Jerry Arrington. Meeks asked the two if they had seen anything and after responding negatively they informed him there was no one at home at 418 Rudisill. Meeks did not believe this and, was convinced Arrington and Rogers were lying. A female, checking her mailbox in front of the building, told Meeks she had observed a black male walk between the houses and had heard a front door slam. Meeks patrolled the area around Rudisill Street and then returned to the 418 address. By this time, other officers had arrived including one with a police dog. Meeks knocked at the door of the house because he was convinced that Trigg, Hamlet, and Gunn were inside. No one responded. After awhile Meeks yelled that dogs would be unleashed into the house if no one came out. William

Trigg then exited the residence and the police handcuffed and held him. Meeks again repeated that dogs would be released if occupants did not exit. Hamlet and Gunn then emerged and were secured by the police.

The three were detained outside the residence at 418 Rudisill Street while officers at the scene called the officers at Wendy's and requested they bring the witnesses to the scene to observe these suspects. This was a distance of seven or eight blocks. Six witnesses were transported to this scene. Officer Sorgan advised them they were to view the suspects. When they arrived with the witnesses, several police vehicles were present. The witnesses were lined up on the sidewalk in front of the house and the suspects were brought out in the yard opposite the witnesses. David Carrion, a customer in the restaurant at the time of the robbery, picked Defendant Gunn as the man who had forced him at gunpoint to the back room of the restaurant. Charles Cooper identified both Hamlet and Gunn as perpetrators of the robbery. William Trigg later plea bargained with the State and agreed to testify in Hamlet and Gunn's trials. He did so, stating that he met Hamlet and Gunn at his girlfriend's house at 418 Rudisill Street, the three of them drove in his green Lincoln to a point near the restaurant and all of them went into the building, Trigg and Gunn carrying handguns. They then committed the robbery as it was described above by the employees and fled back to 418 Rudisill where they were subsequently arrested. After the defendants were identified by the witnesses, the police placed all three of them under arrest. They also found large sums of money in the pockets of Hamlet and Gunn.

### I

Appellants claim the police unlawfully detained and arrested them without sufficient probable cause. They further allege the seizure of the money from their person, which was admitted into evidence over their objection, was illegal since it was inci-

dental to an illegal arrest. They filed motions to suppress in both regards and said motions were denied by the trial court. We find the trial court acted properly in overruling both motions.

Appellants were not placed under arrest until after they had been identified by the witnesses to the robbery. At that point the police had probable cause to make the arrest. The pertinent question is whether Officer Meeks and his assistant had sufficient articulable facts warranting a suspicion that the appellants were inside the residence at 418 Rudisill and that they had committed the robbery at Wendy's. Meeks was informed at the time he approached this address that a robbery had occurred at Wendy's, seven or eight blocks away, that the description of the robbers matched that of Appellants Hamlet and Gunn, that Hamlet and Gunn were seen with William Trigg, who drove a green Lincoln automobile, that this same automobile was seen at at least two other robberies in the general area, that this automobile was located near the residence at 418 Rudisill, the engine was still warm and a pistol holster was lying inside the vehicle. Meeks also knew the police had been informed that these three individuals had committed previous robberies and that they were also known to frequent the house at 418 Rudisill. By information given to him by witnesses, he had reason to suspect that the three individuals were inside the residence. Appellants assert Meeks ordered them from the house on a mere suspicion. We agree with the State that the trial court correctly concluded that Meeks' seizure and detention of Appellants was based on sufficient information warranting a reasonable person to believe that these appellants had committed the Wendy's robbery shortly before and that they were inside the residence at 418 Rudisill Street. Police need not have sufficient information or knowledge amounting to probable cause in order to detain a person for a reasonable length of time to identify that person if the officer has a reasonable, articulable suspicion that the person has been, is, or is

about to be engaged in criminal activity. *United States v. Hensley* (1985) 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The United States Supreme Court addressed detention of suspects recently in *Hayes v. Florida* (1985), 470 U.S. ——, 106 S.Ct. 82, 84 L.Ed.2d 705, (reversing on other grounds). In *Hayes*, the Court stated that a brief detention in the field for the purpose of fingerprinting, when there is only a reasonable suspicion of involvement in a crime not amounting to probable cause, is not necessarily impermissible under the Fourth Amendment. Officer Meeks clearly had sufficient articulable facts warranting a suspicion that the appellants had committed the robbery and were inside the residence. These facts were clearly sufficient to detain appellants for a reasonable time to have them identified.

Appellants question the authority of the officer to order them out of the residence in order to detain them. The police did not enter the house to effect detention. Appellants do not claim, nor does it appear that they had a right to expect privacy or protection in the residence since it clearly was not their residence. The only entry made by police was after the three had exited the residence and been secured. The police then entered merely to ascertain whether or not others were inside and might be armed. They checked the residence, made a determination that no one else was inside and then left. They later re-entered the residence to search it with permission of the owner and obtained money bags and other items connected with the Wendy's robbery. The owner, the mother of Trigg's girlfriend, claimed the police told her she could not go back into her home since it was secured and that it would take a lot of time to get a search warrant if she did not consent to their search. The police stated they merely informed her that they needed to search the apartment, that it would take some length of time to obtain a search warrant due to the late hour, that they could not permit anyone to go in and dis-

turb the scene, and her consent would facilitate their immediate entry and search. Although there is this conflict in testimony, no question is raised here on the search since it was done after their detention and arrest and the only real issue is Appellants' detention and the evidence obtained from their persons after their arrest.

Officer Meeks had sufficient facts to detain the appellants, and it was not unreasonable to take the precaution of ordering them from inside the residence under the circumstances presented here. It was known to him that a robbery had been committed in which handguns were used and he therefore had a right to presume or at least exercise caution in the event they were still armed. Exigent circumstances therefore existed to approach these appellants with caution not only for the safety of himself and the other police officers, but for the safety of others, who could be harmed if Appellants attempted to escape. In addition to the potential escape of these suspects before they could be identified, evidence could be destroyed. *Dorman v. United States*, (D.C.Cir.1970), 435 F.2d 385; *see also United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300; *Maryland Penitentiary Warden v. Hayden* (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. So the police here ordered Appellants out of the house and secured them until witnesses could be brought from the restaurant to identify them. Appellants were identified by these witnesses and placed under arrest. Detention for this purpose was not so unreasonable as to violate Appellants' Fourth Amendment rights. The identification of the witnesses, together with all the other facts and circumstances known to the officers, gave the officers sufficient probable cause to arrest the appellants. The searches incidental to Appellants' arrests, in which the money was recovered from their pockets, was also reasonable and necessary for security reasons. The trial court properly overruled the motion to suppress this evidence. No

reversible error is presented on either of these issues.

## II

 Appellants claim that their identification by the witnesses at the Rudisill Street address was so unduly suggestive that it tainted the reliability and admissibility of the witnesses' testimony. They further claim that the manner of the identification confrontation was so suggestive that it tainted any in-court identification also made by the victims. The facts show that after the three appellants, Hamlet, Gunn, and Trigg were detained outside the Rudisill Street address, six witnesses from the Wendy's Restaurant were immediately brought to the scene. Only two of the witnesses, Michelle Davidson and Charles Cooper, testified. The witnesses were lined up on the sidewalk in front of the house and the suspects were brought out in the front yard, opposite the witnesses. Because it was 11:00 p.m., the lights on the police cars were used to illuminate the area where the suspects stood. Sorgan then asked the witnesses who stood across from the suspects if they were able to identify any of them as the robbers. There was a conflict in testimony regarding what Officer Sorgan told the witnesses en route to the scene. There was testimony that he implied the police had suspects they believed were the perpetrators. Other witnesses and Sorgan testified that he merely told them they had persons they wanted the witnesses to view for possible identification. Reliability is the linchpin in determining the admissibility of identification testimony. The question to be determined is whether the suggestibility of the identification procedure is so suggestive that a very substantial likelihood of irreparable misidentification results. Unnecessary suggestiveness alone does not require exclusion of the evidence. Rather, the question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure may have been suggestive. *Manson v. Brathwaite* (1977) 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Neil v. Biggers,* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Stovall v. Denno* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; *United States v. Wisniewski,* (7th Cir.1984) 741 F.2d 138.

[7, 8] The five factors to be considered in evaluating the likelihood of misidentification are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Johnson v. State* (1982), Ind., 432 N.E.2d 403; *see Peterson v. State* (1985), Ind., 485 N.E.2d 69. Here, both Davidson and Cooper viewed the three appellants about an hour after the crime was committed. They both were close to the perpetrators in a well lighted area and both of them were required to stand and open a cash register or safe for the appellants while guns were trained on them. Their descriptions of the robbers were accurate and comported with the actual descriptions of these defendants. In *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1053, 1055, this Court approved a show up between three robbery victims and the defendant one hour after the crime was committed as follows:

> "An in-court identification of an accused is impermissible when it is tainted by an unduly suggestive pre-trial confrontation unless it can be shown that a factual basis for the identification exists independent of the pre-trial confrontation. *Harris v. State,* (1980) 273 Ind. 60, 403 N.E.2d 792. Moreover, we have held that the merit of having a witness observe a suspect while the offender's image is still fresh in that witness' mind can properly justify a show up occurring shortly after the commission of an offense. *Williams v. State,* (1979) 271 Ind. 656, 395 N.E.2d 239."

Both witnesses were able to support their identification testimony by their observations of Appellants at the scene of the

crime. Under all the facts and circumstances here it does not appear the trial court erred in permitting this testimony.

### III

Finally, Appellants claim there was insufficient evidence of probative value to justify the jury's conclusion that they were guilty of robbery, a class B felony, beyond a reasonable doubt. In examining such a question, of course, we do not reweigh the evidence or judge the credibility of witnesses but consider only that evidence most favorable to the State and all reasonable inferences drawn therefrom. When there is substantial evidence of probative value to support each element of the offense the finding of the trier of fact will not be disturbed. *Linder v. State* (1985) Ind., 485 N.E.2d 73; *Peterson, supra.* In view of all the facts we have discussed throughout this opinion and accomplice William Trigg's testimony which described how he, Hamlet, and Gunn committed this robbery and which comported with the testimony of the victims at the scene, it is clear there was more than adequate probative evidence before the jury to establish beyond a reasonable doubt the appellants were guilty.

The trial court is affirmed.

GIVAN, C.J., and DeBRULER, SHEPARD and DICKSON, JJ., concur.