**STATE of Indiana, Plaintiff–Appellant,**

v.

**Paul WATKINS, Defendant–Appellee.**

**No. 82A01–8706–CR–146.**

Court of Appeals of Indiana,
First District.

Dec. 9, 1987.
Rehearing Denied Jan. 20, 1988.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

John F. Davis, Dennis L. Brinkmeyer, Evansville, for defendant-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The State of Indiana appeals the judgment of the Vanderburgh Circuit Court suppressing evidence of cocaine found in a search of Paul Watkins' luggage and statements made to police by Watkins at the time of the search.[1] We reverse.

## FACTS

On April 29, 1984, Vanderburgh County Deputy Sheriff Droll received a telephone call from a confidential informant that Paul Watkins was coming into Evansville bringing a lot of drugs and that Droll should check for him at the airport. This particular informant had given Droll information concerning drug trafficking previously. The next day, Droll received a call from Agent Edwin Porro of the Drug Enforcement Administration (DEA) at Orlando, Florida, advising that Watkins was coming into Evansville from Orlando and was suspected of transporting drugs. Porro advised Droll that his suspicion was based upon the fact that Watkins got on the plane with no luggage, a small flight bag, acted very nervous, and waited until the last second to board the plane. Droll stated that the DEA has a drug profile which they use in investigation into possible drug couriers.[2] Droll was advised of the flight on which Watkins would be arriving in Evansville. Droll made arrangements with

---

1. Under Indiana Code section 35–38–4–2(5) the state may take an appeal "[f]rom an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution." Suppression of the cocaine found in a search of Watkins' luggage and his statements concerning the cocaine clearly would have the ultimate effect of precluding further prosecution for dealing in cocaine, the offense with which Watkins was charged. *See State v. Williams* (1983), Ind.App., 445 N.E.2d 582.

2. In *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the Supreme Court of the United States recognized the "drug courier profile" which has been developed by the DEA since 1974. *See also United States v. Borys* (7th Cir.1985), 766 F.2d 304, 306 and 311, *cert. denied,* 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 893, and *United States v. Williams* (6th Cir.1985), 754 F.2d 672, 674 in which facts meeting such "drug courier profile" are recited. Also, in *Borys* it is related that Orlando, Florida, is a known "source" city of narcotics.

Deputy Knowles of the Gibson County Sheriff's department to bring a dog specially trained to detect drugs by smell to the Evansville airport and he and other officers and a deputy prosecuting attorney proceeded to the airport to meet Watkins' arriving flight.

When Watkins' flight finally arrived at the airport, Watkins was the first person to deplane. Because he was dressed exactly as described by the DEA officer, Deputy Droll recognized him as Watkins. Watkins was observed making a telephone call and then negotiating with a cab driver to take him to Carbondale, Illinois, for a fare of $60.00. In the meantime, Officer Knowles' dog had sniffed the baggage from the flight upon which Watkins had arrived and had reacted positively to Watkins' bag. All the baggage was then placed on the luggage rack for passengers to pick up. Watkins obtained the bag to which Officer Knowles' dog had reacted positively for drugs and started toward the waiting cab driver. Droll approached Watkins, identified himself as a police officer and asked Watkins if the officers could talk to Watkins at a location out of the way of persons in the airport. Watkins accompanied the officers to a location in a corner near the bar and cafe. There, Watkins was informed that the drug detection dog had indicated the presence of drugs in his luggage. Watkins was informed of his *Miranda*[3] rights and asked to sign a consent form consenting to the search of his luggage. The consent form advised Watkins that he did not have to consent to a search without a warrant, and further recited "This written permission to search without a search warrant is given by me the above officer(s) voluntarily and without any threats or promises of any kind at 11:36 P.M. on this 30th day of April 1, 1984 at Airport." The consent form was read to Watkins and he signed it. Watkins was not advised he had a right to have counsel present and to advice of counsel prior to consenting to the search.

As the officers opened the bag which the dog had sniffed and indicated contained drugs and began to search it, Watkins stated "It's not in there, it's in here," indicating his small carry-on bag. He further advised the officers that the substance was cocaine. Watkins also informed the officers that he had transferred the cocaine from the larger bag to the smaller one during a layover stop. Search of the smaller bag produced 64.9 grams of very high grade cocaine.

At all times involved herein, Watkins and the officers were in the public area of the airport facility. No weapons were drawn by police, no threats were made, no force was employed, and no voices were raised and Watkins was never handcuffed. Watkins was very cooperative.

The trial judge granted Watkins' motion to suppress the cocaine, evidence concerning the search, and his statements on the ground that the failure of the officers to advise him that he could consult a lawyer prior to consenting to the search rendered his consent involuntary, and, therefore, made all evidence of the search and his statements inadmissible. We disagree and reverse.

## ISSUES

1. Did the trial court properly grant the motion to suppress evidence of the search of Watkins' luggage because the police failed to inform him that he could consult with a lawyer before consenting to the search?

2. Were Watkins' statements to the police during the search inadmissible and thus properly suppressed?

## DISCUSSION AND DECISION

*Issue One*

█ Before considering the issue of Watkins' consent to search, we first must consider the propriety of his being stopped and detained at the airport, and whether or not the subjecting of his luggage to a sniff test by a dog trained to discover drugs by smell constituted an illegal search in violation of his Fourth Amendment rights. That the

---

**3.** *Miranda v. Arizona* (1966), 384 U.S. 436, 86    S.Ct. 1602, 16 L.Ed.2d 694.

smell testing by the trained dog is not a search within the meaning of the Fourth Amendment is clear. *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. Further, the Fourth Amendment does not prohibit law enforcement authorities from detaining personal luggage for a sniff test by a trained narcotics detection dog if there is a reasonable suspicion that the luggage contains narcotics. *Id.*[4]

At the time Watkins left the airplane and entered the Evansville airport, the officers did not have probable cause to arrest him. However, in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court of the United States held that law enforcement officers have a right to make a brief investigatory stop of a person provided they have a reasonable and articulable suspicion that the person has been, is, or is about to be engaged in breaking the law. Our supreme court has recognized the *Terry* investigatory stop rule. *Hamlet v. State* (1986), Ind., 490 N.E.2d 715; *Garrett v. State* (1984), Ind., 466 N.E.2d 8. In *Garrett*, our supreme court, citing *Terry*, stated:

> "It has been established that police have a right to make an investigatory stop of a vehicle or of an individual on foot if, at the time of such stop, a man of reasonable caution would believe that further investigation was appropriate. It is not necessary that police have probable cause for an arrest when making such an investigatory stop. The reasonableness of the warrantless intrusion depends upon specifically articulable facts and reasonable inferences from those facts which warrant the suspicion of unlawful conduct."

466 N.E.2d at 10.

■ Here, based upon information provided by a reliable informant and by the DEA, the officers had a reasonable and articulable suspicion that Watkins was carrying illegal drugs. Under such circumstances, the police had a right to make an investigatory stop of Watkins and to detain him briefly to complete their investigation. The officers also had a right to detain his luggage based upon the indication of drugs by the trained drug-detecting dog. The question then becomes whether Watkins' consent to search his luggage was voluntary.

Watkins relies upon the decisions of our supreme court in *Sims v. State* (1980), 274 Ind. 495, 413 N.E.2d 556, and *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, for the proposition that the officers had a duty to advise him of his right to counsel prior to seeking his consent to search. *Sims*, quoting from *Pirtle*, stated:

> " '[A] person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent. This right, of course, may be waived, but *the burden will be upon the State to show that such waiver was explicit,* and as in *Miranda*, the State will be required to show that the waiver was not occasioned by the defendant's lack of funds.' (Emphasis added). 263 Ind. at 29 [323 N.E. 2d 634]."

274 Ind. at 500, 413 N.E.2d at 558.

■ On the other hand, when a person consenting to a search is not in custody it is only necessary for the state to show that the consent was in fact voluntarily given and was not the result of duress or coercion, express or implied. *Smith v. State* (1982), Ind., 432 N.E.2d 1363. Watkins asserts the rule in *Sims* and *Pirtle* applies thereby invalidating his consent to search. We disagree.

■ The statements of our supreme court in *Sims* and *Pirtle* must be viewed in

---

**4.** In *United States v. Place, supra,* the Supreme Court acknowledged the validity of the initial investigatory stop. However, because Place was detained for 90 minutes in a small interrogation room with police officers, the court held the police overstepped the bounds of a legitimate *Terry* stop. Here, Watkins at all times was in the public area of the airport. His plane landed about 11:00 P.M. and he made a telephone call, negotiated with the cab driver, and went to the baggage area to obtain his luggage. The consent to search was given at 11:36 P.M. No such unreasonable detention occurred as in *Place. Cf. United States v. Borys* (7th Cir.1985), 766 F.2d 304, where a 75 minute seizure of defendant's luggage was held not violative of Fourth Amendment.

light of the factual circumstances of those cases. In *Sims*, the defendant had been arrested and taken to the police station prior to his signing the consent to search. In *Pirtle*, the defendant had been arrested and the consent was obtained during questioning at the police station which continued beyond the time he asked for a lawyer. The rule announced in *Pirtle* and followed in *Sims* was intended for those factual situations, and is not applicable to legitimate investigatory detention under *Terry*. Our supreme court clearly has made this distinction in the very recent case of *Peterson v. State* (1987), Ind., 514 N.E.2d 265. In that case, two days after the robbery of a pharmacy and murder of the pharmacist, police observed Peterson and a girl leaving a motel in the early morning. Peterson acted nervous, was moving rapidly, and matched a description of one of the suspects in the robbery. Police identified themselves, asked Peterson for identification, and then asked if he would mind if they looked into his car and motel room. Peterson replied he didn't mind since he had nothing to hide, and went with the officers and allowed them access to his car and room. Peterson claimed his consent was invalid, relying upon *Pirtle*. First, our supreme court held there was a legitimate investigatory stop under *Terry*, and then addressed the consent to search issue. With regard to the consent issue, the court said:

> "Appellant next contends that his consent to search was invalid, because it was not accompanied by a waiver of counsel. In *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, relied upon by appellant, this court held that a consent to search was invalid when given by one under full custodial arrest, after having stopped a formal police interrogation by requesting the opportunity to confer with a lawyer. Here we are not at a similar confluence of the Fourth and Fifth Amendments, and appellant was not under arrest. The consent to search was not invalid on this basis."

At 272.

Watkins' consent to search, therefore, was not invalid under *Pirtle*. The question then is whether or not his consent to search was freely and voluntarily given. This issue is to be resolved from a consideration of the totality of the circumstances. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. The evidence here sufficiently establishes that Watkins' consent to search was freely and voluntarily given. The trial court's granting the motion to suppress based upon *Pirtle* and *Sims* was in error under the holding of our supreme court in *Peterson*.

*Issue Two*

■ The State contends also it was error to suppress Watkins' statements made to the police at the time of the search. We agree.

Watkins had been given proper *Miranda* warnings. He had not indicated an unwillingness to talk with the officers. He did not request a lawyer. His statement that what the police was looking for was not in the larger bag but was in the smaller one was a volunteered statement rather than the product of any interrogation. There was no violation of his *Miranda* rights. Rather, Watkins claims his statements were a product of the illegal search and thereby tainted. Because we have determined the search was a lawful search conducted pursuant to a voluntary consent, there is no taint attaching to his statements. Suppression of the statements was error.

Judgment reversed and cause remanded for further proceedings.

ROBERTSON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

Without question, there was ample cause for investigation and inquiry concerning the luggage which the dog had targeted. Had Watkins and his luggage not been detained, he would have departed for Carbondale, Illinois, in the taxicab.

However, the State does not argue that seizure of the cocaine was authorized pur-

suant to an exigent circumstance search. The State premises its argument solely upon validity of the consent. It may be of further import, with regard to any exigent circumstance argument, that the cocaine was not found in the luggage which the dog had indicated, but rather in the personal carry-on bag possessed by Watkins. *See Robles v. State* (1987) Ind., 510 N.E.2d 660.

In any event, I find no authority which would authorize an arrest based upon the targeting of certain luggage by a trained narcotics dog. Such might well justify further investigation or issuance of a search warrant but not an arrest or even a warrantless search. *See* 31 A.L.R.Fed. 931 and 31 A.L.R.Fed.Supp. (1987).

The appellant accurately states that at the time he signed the consent form, he was in the presence of several uniformed and armed police officers, one or two dogs and a deputy prosecutor. He had already been advised of the dog's discovery and of his *Miranda* rights. A custodial setting, in which Watkins was not free to leave, clearly existed. *See Dunaway v. State* (1982) Ind., 440 N.E.2d 682; *Barber v. State* (1981) 4th Dist. Ind.App., 418 N.E.2d 563. Watkins was told that if he did not consent, the police could obtain a search warrant. The consent signature was unmistakably a submission to the authority of the law in a full custodial situation. *See Bumper v. North Carolina* (1968) 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797.

The majority opinion here relies upon *Peterson v. State,* (1987) Ind., 514 N.E.2d 265, to distinguish *Sims v. State* (1980) 274 Ind. 495, 413 N.E.2d 556, and *Pirtle v. State* (1975) 263 Ind. 16, 323 N.E.2d 634. *Peterson* did in fact distinguish *Pirtle* in that *Pirtle* involved an interrogation which took place after a formal arrest and after the defendant had requested an opportunity to consult with an attorney. *Peterson,* however, did not purport to overrule the principle enunciated in *Sims* and in *Pirtle* that when a custodial interrogation as opposed to a limited investigatory stop is involved, the defendant must be afforded the right to consult with an attorney with regard to executing a search consent.

The *Miranda* warning does not validate the search consent. The investigation target must be advised that he has the right to consult with an attorney before executing any such consent. *See Sims v. State, supra; Pirtle v. State, supra.* Without such warning and under the circumstances presented here, the trial court was within its prerogative to determine that the consent was not shown to have been given freely and voluntarily.

The case before us is analogous to *State v. Thrall* (1984) 1st Dist. Ind.App., 470 N.E.2d 749, *trans. denied,* in which the First District affirmed suppression of evidence obtained during a custodial interrogation. In *Thrall,* as here, an incriminating statement was made after defendant had been given a *Miranda* warning and had signed a written waiver.

The inculpatory statement here was not, in my view, volunteered. It was clearly the product of what had occurred immediately before—the custodial investigation, interrogation and the resulting consent to a luggage search. Without the threatened and imminent search, there would have been no inculpatory statement. Given the invalidity of the consent, the inculpatory statement, which was a product of the preceding events, was also correctly suppressed.

The ruling on the Motion to Suppress was correct and should be affirmed.