Anthony E. PETERSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8602–CR–192.

Supreme Court of Indiana.

Oct. 16, 1987.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant was convicted in a trial by jury of murder in the shooting death of pharmacist John Stockdale during a robbery of the Brock's Pharmacy in Indianapolis. He received a sentence of fifty years. An appeal from a conviction at a previous trial for this offense resulted in a reversal because of the erroneous admission of identification testimony of one of the State's eyewitnesses produced through hypnosis. *Peterson v. State* (1983), Ind., 448 N.E.2d 673. Appellant's two accomplices in the robbery, John and Clarence Randall, were also convicted and their convictions were affirmed in *Randall v. State* (1983), Ind., 455 N.E.2d 916, and *Randall v. State* (1985), Ind., 474 N.E.2d 76.

The present appeal to this court challenges; (1) the admissibility of testimony of three State's witnesses evidencing their direct in-trial and pre-trial identifications; (2) the admissibility of a photograph of the body of the victim; (3) a restriction upon the cross-examination of a State's witness John Patton; (4) the admissibility of testimony by a State's witness who had been subjected to hypnosis; (5) a restriction upon the cross-examination of the State's witness Marjorie Carter; (6) the admissibility of articles seized during a stop of appellant, an arrest, and a search of his hotel room and automobile; and (7) the sufficiency of evidence of identification.

The evidence reveals that three men, one armed with a sawed-off shotgun and the other two with handguns, robbed a pharmacy in Indianapolis, shot and killed the pharmacist, stole cash and drugs, and restrained several employees and customers in the process. The man who shot and killed the pharmacist pulled a mask over his face during the final and exit stages of the episode, while the other two used no disguise at all. The following day appellant, John Randall, and Clarence Randall, checked into a Muncie, Indiana hotel, requesting adjoining rooms. The Randalls were identified at trial as two of the men who had robbed the pharmacy. A shotgun resembling the one used in the robbery was seized from appellant's car.

## I.

Carter, a school teacher and former store security person, and a cashier on duty at the time of the crime pointed out appellant at trial as the masked man who passed her on the way out of the store and who carried a pharmacy medicine bag. She likewise testified that she selected appellant's photograph from an array shown her by police, two days after the crime.

Patton, a customer in line at the pharmacy counter, pointed out appellant at trial as the man whom he observed standing behind the counter talking with the pharmacist, and as the man who, while without any disguise, shot and killed the pharmacist. He likewise testified that he selected a photograph from an array shown him by police, four months after the crime.

Jeter, another cashier on duty at the store, pointed out appellant as having been a customer in the store on several occasions prior to the day of the crime. She likewise testified that she picked out a photograph of appellant as a customer of the store during a photographic display five months after the crime.

Two days after the robbery Carter and Jeter were shown a group of fifteen photographs arranged on a table in three vertical rows of five each. They were told that three suspects were among them. The photograph of appellant and those of the Randalls had plain backgrounds while the

others showed height charts. Appellant argues that there were significant disparities in the distinguishing features of those portrayed in the photographs, however the record does not bear this out. Carter selected the photographs of appellant and both Randalls. Jeter selected the photographs of the Randalls but not the one of Carter. Patton was not present at this procedure. No defense counsel was present.

On the third day after the robbery, appellant personally appeared in a lineup viewed by Carter, Jeter, and Patton. Carter pointed out appellant, but Jeter and Patton did not. No defense counsel was present.

Five months after the robbery, Jeter and Patton were shown a photographic display. Jeter selected appellant, not as a participant in the robbery, but as a customer of the pharmacy on at least five separate occasions prior to the robbery. Patton identified appellant from the photographs as the man who shot and killed the pharmacist. No defense counsel was present.

■ Appellant claims that the admission of evidence of the identification of him by these three witnesses, both before and during trial was error, and denied him due process of law. Due process of law requires the exclusion of evidence of out-of-court identifications in physical lineups or photographic displays, and direct in-court identifications, which are the product of identification procedures staged by the police which are impermissibly and unnecessarily suggestive and thereby create a substantial likelihood of irreparable misidentification. *Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766. *Sawyer v. State* (1973), 260 Ind. 597, 298 N.E.2d 440.

■ Appellant argues that the telling of the witnesses that three suspects were among those portrayed in the fifteen photographs, together with the differing backgrounds and differing physical characteristics of the persons shown, was impermissibly and unnecessarily suggestive. In answer, it may be said that the photos of appellant and the Randalls were not clustered together as they were displayed in the three vertical rows so as to suggest them. Moreover, appellant and the Randalls were very different looking, and this difference caused difficulty in fairly presenting them in a photographic array. It was however, on the other hand, unduly suggestive to state that three suspects were among the fifteen. And yet back on the other side of the ledger, Carter testified that she paid no attention at all to the background of the photographs when selecting appellant's photograph. On balance, the means adopted at the first photographic lineup were not impermissibly and unnecessarily suggestive, and therefore both the in-court identification of appellant by the three witnesses and the out-of-court identification by Carter were properly admitted despite the level of suggestiveness present.

■ Appellant next argues that the live lineup conducted was an extension of the unduly suggestive photographic identification procedure of the previous day and the identification of him by Carter from this lineup was achieved in violation of his right to have counsel present. On the first point, the photographic procedure was not unduly suggestive as determined above. On the second and subsequent points made in this appeal, there was no right to counsel at either of the two photographic displays under the holding of *United States v. Ash* (1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619, and there was no right to counsel at the corporeal lineup, as it occurred prior to the filing of formal charges. *Hollonquest v. State* (1982), Ind., 432 N.E.2d 37.

Appellant next argues that the photographic lineup conducted five months after the crime, and attended by Jeter and Patton, produced positive identifications of him which were inadmissible under the due process clause. In support he identifies the two prior identification procedures, the corporeal one and the photographic one, as unduly suggestive, together with the reuse of his photograph and those of the Randalls at this second procedure. The first photographic array was viewed by Jeter and not by Patton. It was not impermissibly suggestive. Jeter explained in her

testimony that she had not pointed appellant out at the first photographic array and in the live lineup, because she had not seen him on the day of the crime, but did recognize him on both previous occasions as a familiar customer in the store. We therefore conclude that the identification of appellant by photograph as a familiar customer but not one of the robbers, on the second occasion by Jeter, was not the product of the level of suggestiveness of the procedure employed during the three identification events.

◼ Patton testified that he decided immediately after the crime not to become involved, as he was a convicted felon, and in his neighborhood it was not healthy to be a snitch. Consequently he did not identify appellant as the killer during the first two identification procedures. He testified further that though he ofter drank to rid himself of the memory of the robbery, he was unable to do so. He felt that it could have been he who was killed. He therefore chose to come forward as a matter of conscience. The trial court was within its authority to credit this testimony and to conclude that his belated identification of appellant by photograph and his subsequent in-court identification were not the product of the level of suggestivity of the procedures adopted by the police on the various occasions, and was therefore admissible as consonant with due process of law.

## II

Appellant claims the trial court erred in admitting State's Exhibit # 10 over the objection that it was irrelevant, gruesome and inflammatory. The exhibit is a color photograph which purports to represent the naked upper torso of the victim in the morgue. The face is tilted slightly toward the camera; the mouth is open and the teeth stained; the eyes are closed and the area about the left eye is blackened. A card lies on the chest bearing the numbers 78–960. There are no autopsy marks. No wound is visible.

◼ Photographs, like other forms of evidence, are admissible at trial if they are relevant. The critical question is whether a photograph is a true representation of anything, of which it is competent and relevant for a witness to give a verbal description. *New v. State* (1970), 254 Ind. 307, 259 N.E.2d 696. One of the store clerks identified the photo as being that of the alleged victim. Dr. Pless testified from the autopsy report of another pathologist who performed an autopsy. He also described the use of identifying autopsy numbers, and pointed out that the number on the report was the same as the number shown on the body depicted in exhibit 10, namely 78–960.

◼ The State was required to prove that the alleged victim died as a result of a gun shot wound. A relevant opinion of cause of death would be an opinion of the cause of death of the alleged victim, and no other. For the purpose of qualifying the opinion for admission on this basis, it would have been relevant for the store clerk to give a verbal description of the person of the victim, and for the doctor to give a verbal description of the numbering technique for identifying autopsies. The challenged exhibit was therefore competent and relevant, as it represented both subjects.

Appellant argues that his offer to stipulate that ".. the individual in the picture shown to the Jury as the pharmacist in the smock is the same one that died and is the same one in exhibit 22" rendered the exhibit irrelevant. We know of no rule which renders evidence inadmissible because of such an offer, and none is cited.

Appellant also argues that the exhibit was irrelevant because of the testimony of Dr. Pless that the exhibit was not necessary to the formulation by him of his opinion on cause of death. Quite obviously, the pathologist meant by this that the photograph does not display any fact which aided him in determining the physical cause of death. It was indeed irrelevant for that purpose, but of course not for others as stated above.

## III

◼ The State's witness Patton provided the most direct evidence identifying appel-

lant as the person who shot and killed the pharmacist. The witness had failed to identify appellant in two initial pre-trial lineups, as indicated above. Impeachment of this witness was critical to the defense.

Patton had described the killer as being taller than he. During the cross-examination of Patton, defense counsel sought a court order to require Patton to stand back to back with appellant, or ten feet apart from him, before the jury, to permit the jury to compare their heights. The court denied the order. The purpose of this request was to prove the fact that appellant was not taller than the witness and through this fact to convince the jury that the capacity of the witness to observe the events comprising the crime was restricted, that his recall of those events was limited, and that his testimony identifying appellant as the killer at trial was not therefore worthy of belief.

Appellant claims that the ruling of the court unduly restricted his cross-examination. The ruling however did not prevent the witness from being confronted before the jury with the fact that appellant was not taller, if such be the fact. The height of each could be proved, and then the witness recalled for such confrontation.

 Experiments and demonstrations are properly permitted to be conducted during the trial, if they will aid the court and jury. *Green v. State* (1945), 223 Ind. 614, 63 N.E.2d 292. The conduct of experiments and demonstrations in the courtroom can however pose peril to the fairness of a trial. In deciding whether to permit one, a court should consider such factors as the ability to make a faithful record of the drama for appeal purposes, the degree of accuracy in the recreation of the actual prior conditions, the complexity and duration of the procedures, other available means for proving the same facts, and the risk which the conduct of such a procedure may pose to the fairness of the trial. Here unreasonableness or arbitrariness in the ruling of the trial court is not apparent, since the court could have given weight to such obvious negative considerations as the ease with which the height of the two could

be shown by other means, the lack of duplication of prior conditions at the time of the crime, and the possible threat to the fairness of the trial posed by having to take precautions for the safety of the witness during such a demonstration before the jury.

## IV

 This Court reversed appellant's first conviction for this murder, holding that the testimony of the the the State's witness Szeszycki, the stockboy at the pharmacy, pointing out appellant as one of the robbers, was erroneously admitted since it was the product of hypnotic suggestion. Upon retrial, the witness was permitted to testify to the events of the crime but was prohibited from making any identification. Appellant now claims that the ruling was error.

This Court has held that when it is shown that a State's witness has been placed in a hypnotic trance by police investigators to enhance memory, testimony of that witness is inadmissible at trial unless the State demonstrates by clear and convincing evidence that such proposed testimony has a factual basis independent of the hypnotic session. *Strong v. State* (1982), Ind., 435 N.E.2d 969. Such an independent factual basis, and thus the absence of taint from a hypnotic session, would be demonstrated by a showing that a post-hypnosis statement was consistent with a pre-hypnosis one. During direct examination of the witness at this retrial the State did not elicit a description of the man who shot and killed the pharmacist and the witness did not identify appellant. As a post-hypnosis statement, this aspect of the testimony on retrial is consistent with pre-hypnosis statements of the witness. As pointed out by appellant, the State did elicit from the witness that one of the other robbers held a sawed-off shotgun, whereas the record shows that he had not described the weapon as "sawed-off" or had used the word "rifle" in his pre-hypnosis statement. Since the testimony of the witness was consistent in all other respects, and given the inevitable and ever present flexibility in

human communications, this single inconsistency does not undermine the clear and convincing basis for the court's ruling that the testimony actually presented on retrial was untainted by the hypnotic procedure and was therefore admissible.

## V

 Appellant next claims that the trial court unduly restricted the cross-examination of the State's witness Carter, when it ruled that the defense could not question her upon an episode for the purpose of showing bias and prejudice. At a hearing for the purpose of developing this question, it was brought out that in the time period between appellant's arrest and the second trial, the witness caused criminal charges to the brought against a person with whom she was acquainted. Those charges were dismissed. The bias of a witness which may be demonstrated at trial is that which is directed for or against a party. *Clark v. State* (1976), 264 Ind. 524, 348 N.E.2d 27. A subject is a legitimate basis for cross-examination for bias if it carries with it a reasonable degree of probability of bias and prejudice. *Id.* The cause of the dismissal is not entirely clear. The cause urged by appellant is that Carter as the complaining party, had lied. The investigators simply concluded after a complete investigation that the charge lacked substance. Carter claims to have urged dismissal after speaking with the man's mother and relegating the entire incident to a big mistake in her personal life. The obscurity is not decisive. This matter arose in the personal life of the witness. The motivation which caused the witness to initiate the charges was personal and bears no nexus with the case against appellant. If the conduct of the State in dismissing the charges she brought engendered any response in the witness, that response would not have directed itself against appellant, but rather against the State, the party on whose behalf the witness testified. The ruling refusing to permit the defense to make an incursion into this subject was correct, as the subject did not carry with it a reasonable degree of probability of revealing a bias or prejudice of the witness against the defense or in favor of the State.

## IV

At the trial, the court permitted items to be introduced into evidence which had been seized from appellant's car and hotel room. The court overruled objections that such evidence was inadmissible as having been procured in violation of the restrictions of the Fourth Amendment's prohibition against unreasonable searches and seizures.

Two days after the robbery of the Brock's Pharmacy, appellant and a girl were observed in the early morning by the police as the two left their room at a hotel. According to the testimony appellant appeared nervous and was moving rapidly. The police felt that he "kind of matched" a description given them of one of the suspects in the robbery. Fearing that the two were leaving the area, two of the officers approached them on the public street, identified themselves as police officers by showing their credentials, and asked appellant to identify himself. Appellant was then asked, according to testimony whether he would "mind" it if the officers looked into his car and hotel room. Appellant replied that he did not mind since he had nothing to hide, and accompanied the officers to both, and permitted them access to both. The officers saw several items including a single syringe in one place, a sack of fifteen disposable syringes in another, and a sawed-off shotgun in the trunk of the car. The officers then procured a search warrant and seized the items.

### A.

██ It is first argued that the items seized were inadmissible because discovered in conjunction with an arrest unsupported by probable cause. The evidence recited above does not show an arrest which would be supportable only upon full probable cause. It does rather show a limited seizure of the person, namely an investigatory stop, supportable by knowledge of the officer of facts which would

warrant a man of reasonable caution in believing that the limited action taken was appropriate. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. This constitutional standard was met. There was no error in the ruling of the court on this basis.

### B.

Appellant next contends that his consent to search was invalid, because it was not accompanied by a waiver of counsel. In *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, relied upon by appellant, this court held that a consent to search was invalid when given by one under full custodial arrest, after having stopped a formal police interrogation by requesting the opportunity to confer with a lawyer. Here we are not at a similar confluence of the Fourth and Fifth Amendments, and appellant was not under arrest. The consent to search was not invalid on this basis.

### C.

It is next contended that the items were inadmissible because seized pursuant to a search warrant issued upon the basis of a false affidavit. The warrant authorized a search of three rooms in the hotel and two cars parked in the hotel parking lot for drugs and drug paraphernalia taken in the robbery and sawed off shotguns and a blue steel revolver used in the robbery. One of the cars was reported stolen. The affidavit alleged personal observation by the affiant officer of three men, including appellant, that met the descriptions of suspects in the pharmacy robbery, and that appellant's car contained syringes and two sawed-off shotguns and shotgun shells, and that two of the rooms contained shotgun shells and syringes, at least one filled with a red liquid.

The false part of the affidavit was that a confidential informant had personally overheard a man in a bar say that he had wasted the druggist in Indianapolis and that this man left in one of the cars to which the police were seeking access by warrant, when in fact the informant had no personal knowledge of these matters. The policeman who prepared the affidavit testified that the claim in the affidavit that the informant had personal knowledge of the events at the tavern was false, and that he had drafted the affidavit, but had not noticed this mistake when he read it over. The testimony developed on the point supports the conclusion that this was not a deliberate falsehood, but that it was an innocent oversight made in haste.

Here, the affidavit for search warrant provided in its wholly truthful part an adequate basis for issuance. The false part was an innocent oversight made in haste, and not a deliberate act. The warrant therefore is not vitiated. *Johnson v. State* (1985), Ind., 472 N.E.2d 892.

### D.

Appellant finally claims that the syringes found in the car were improperly admitted because the State failed to establish a chain of custody, they were irrelevant, and they were unduly prejudicial. The record is obscure in it presentation of an objection based upon the lack of a chain of custody. The evidence throughout put the syringes in a sack, and the sack in which the exhibits were seized was marked and the items were of the type which is commonly available in pharmacies. The items were not fungible and the danger of tampering, loss, or mistake with respect to them was at a minimum. We find the appellate burden to demonstrate error in the ruling of the trial court here has not been met.

The relevance of matter is the tendency of it to prove a material fact. In Indiana evidence is relevant even though its tendency in this direction is exceedingly slight. *Pirtle v. State, supra.* The relevance of the fact that appellant had syringes designed to be used in conjunction with the stolen drugs is exceedingly slight in its tendency to show that he did steal such drugs, however that tendency is sufficient here. The tendency of these syringes to create a biased response in the trier of fact is not so great as to outweigh their relevance and render them inadmissible. The unused syringes when considered in con-

junction with the used one, do no more than to add to the inference of addiction or drug use which is already present by reason of the fact that drugs were the target of the robbery.

## VII

The final point raised in this appeal is that the evidence serving to identify appellant as a perpetrator of these offenses was wholly insufficient to support the jury verdict. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558. In so doing we may consider evidence supporting the verdict without regard to which side produced it. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Taylor v. State* (1973), 260 Ind. 64, 291 N.E.2d 890. *Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657. Carter the cashier, and Patton the customer, both present at the time of the crime, pointed appellant out as a perpetrator, from the witness chair. Carter's reliance upon her recognition of clothing as a important part of her identification, and Patton's failure to identify appellant in the initial two identification procedures in which appellant or his photograph was present, were matters tending to reduce evidentiary weight and credibility, and were for consideration of the trier of fact. Their testimony was properly admitted for consideration by the trier of fact, and provided the basis for a reasonable inference of guilt beyond a reasonable doubt.

The conviction is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.