**Richard L. WHITE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 28A01–8901–CR–5.

Court of Appeals of Indiana, First District.

July 25, 1989.

Eugene C. Hollander, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Richard L. White appeals his conviction of murder for which he received a fifty-year sentence.

We affirm.

White maintains that the following errors occurred at his trial:

(1) the trial court incorrectly instructed the jury on the law of voluntary intoxication;

(2) the conviction and sentence were based upon insufficient evidence;

(3) the trial court erroneously refused White's tendered final instruction on voluntary manslaughter;

(4) the trial court admitted irrelevant photographs;

(5) the State engaged in prejudicial prosecutorial misconduct; and,

(6) the trial court imposed a fifty-year sentence which was manifestly unreasonable.

## I.

White contends the trial court incorrectly instructed the jury on the law of voluntary intoxication by giving an instruction tendered by the State containing an amended version of Indiana Pattern Jury Instruction 10.09. The record discloses that no objection to the giving of the instruction as tendered was made by White at trial. The failure to object will waive appellate consideration of an error concerning the giving of an instruction. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 190, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809; *Baker v. State* (1987), Ind., 505 N.E.2d 49, 51.

## II.

■ White argues the evidence is insufficient to support the jury's determination that he had formed the requisite intent to commit the crime of murder. He maintains that, given the evidence of his exceptionally heavy consumption of alcohol before the shooting, the only reasonable inference which could be drawn was that he was incapable of knowingly killing Michael Workman.

When reviewing the sufficiency of evidence, this court will consider only the probative evidence and the reasonable inferences supporting the verdict. If, without weighing evidence or assessing witness credibility, we determine that a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Melendez v. State* (1987), Ind., 511 N.E.2d 454, 457.

■ In this state, voluntary intoxication will relieve a defendant of responsibility for a crime only when it prevents him from forming the intent necessary to commit the offense. *Bates v. State* (1980), 274 Ind. 214, 409 N.E.2d 623, 625. The law recognizes that a defendant may be grossly intoxicated yet still capable of forming the intent to kill and murder. *Bates, id.* quoting *Booher v. State* (1901), 156 Ind. 435, 447, 60 N.E. 156, 161. To negate the State's evidence of intent, the defendant's intoxication must be of such a degree as to deprive the defendant of the power to deliberate and form or possess the necessary design or guilty intent. *Id.; Melendez, supra.* It is the jury's duty to assess the evidence of intoxication in light of the State's proof that the defendant possessed the requisite mens rea. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1089. The intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death. *Melendez, supra.*

White stipulated that the victim, Michael Workman, died at the Cozy Corner Tavern on May 4, 1985 as a consequence of a mortal gunshot wound inflicted by one .357 magnum bullet fired from a Smith and Wesson revolver owned by White. Hence, the only facts remaining to be proved by the State were the identity of the gunman and whether at the time of the shooting, the assailant killed Michael Workman "knowingly." As White argues, the record contains testimony that he was known to be a heavy drinker, that he was a "regular" at the Cozy Corner Tavern, that he began drinking at about 9:30 a.m. on the day of the murder, and, that he continued to drink throughout the day and evening. Notwithstanding this evidence, the jury could still reasonably infer, beyond a reasonable doubt, that White did knowingly kill Michael Workman.

A number of persons had the opportunity to observe White on the evening he shot Michael Workman, both before and after the shooting. Dr. Bailey, the Greene County Coroner, encountered White when he arrived at the Cozy Corner Tavern to investigate the shooting, and had the opportunity to observe White's behavior over a period of about ten to fifteen minutes. During that time, Dr. Bailey saw White walking back and forth in the tavern with a police officer, and also noticed White smoking a cigarette. White did not appear impaired when he walked, and he smoked the cigarette without any loss of coordination. Dr.

Bailey did not detect anything abnormal in White's physical condition and did not observe any of the hallmarks of intoxication.

A former police officer who knew White and talked to him earlier in the evening noted that White's eyes appeared glassy and his pupils were somewhat dilated but White did not smell of alcohol. Before the shooting, White appeared to be at ease; afterward, White sat quietly, offered no resistance and made no attempt to leave.

One of the investigating officers testified that he spent fifteen to twenty minutes with White after the shooting including five to seven minutes in close proximity to White in the police car. When the officer arrived, White asked him how he was and called the officer by name. White was also communicative in the squad car and asked repeatedly whether the victim would be all right. The officer escorted White to the restroom and observed at that time that White was sure on his feet. The officer noticed a strong odor of alcohol about White but White appeared to be in control of his actions. White did not slur his speech and had the presence of mind to request an attorney.

A second officer spent about twenty minutes with White about two hours after the shooting. Although it was obvious to the officer that White had been drinking, White did not appear to the officer to be drunk. White asked this officer for an attorney and also asked the officer for a breathalyzer test.

Likewise, several persons encountered White at the Cozy Corner Tavern before the shooting, among them, the bartender and waitress who served White. Both had observed White in the bar on prior occasions when they knew White to be drunk, and had the ability to compare White's behavior during the evening of the shooting with their observations of previous occasions. White's waitress testified that she served him one VO and coke and one or two shots of schnapps. White sipped the mixed drink for a long period of time before the shooting. The waitress did not observe any signs of intoxication such that she would refuse to serve him. The bartender reported that she too had seen White drinking on numerous occasions and noted that after White drank a lot he tended to slur his words a little. She did not notice White slurring his words when he spoke to her.

In addition to the testimony intended to establish White's physical condition, the State presented evidence from a weapons expert with the Indiana State Police who opined that the gun could not have discharged accidentally; either White pulled the trigger displacing a weight of about ten and one-half pounds or White cocked the hammer back first and then fired the gun, with the pull on the trigger equivalent to about three pounds. White shot from a seated position when Workman was within four feet of him. An eyewitness to the shooting saw White recoiling when the gun discharged.

The State also offered evidence tending to show a motive for the slaying. White and the decedent dated the same woman at about the same time. When White learned that the woman claimed he was the father of her child he denied paternity, maintaining that the decedent was the child's biological father. White was fired from his job with the city of Linton one week before the shooting. He purchased the gun used to kill Michael Workman only two days before the slaying.

As we have related in detail, the record contains ample evidence in favor of the jury's determination that White possessed an awareness of what he was doing at the time he shot Michael Workman. There is ample evidence that White retained both the physical and intellectual skills necessary to consummate the crime despite his intoxication.

## III.

■ White next claims error in the trial court's refusal of his tendered instruction on the offense of voluntary manslaughter. Other than the testimony relating to the extent of his intoxication, White does not point to any other evidence of record supporting an instruction on voluntary manslaughter, and, having reviewed the entire

record, we find none. To the contrary, the evidence shows that White was characteristically in control of his emotions on the evening of the murder. White himself disavowed any memory of the events occurring in the Cozy Corner Tavern. He denied any feelings of resentment which might have led to the shooting. Hence, the instruction on sudden heat was properly refused. *Cf., McCarty v. State* (1986), Ind., 496 N.E.2d 379.

## IV.

■ White contends the trial court erred in admitting photographs depicting bullet holes in his truck, a license plate reading "This Vehicle Protected by Smith & Wesson," beer cans in the back of the truck, and, gun cases and gun magazines found about White's apartment. White maintains the photographs were irrelevant and introduced solely to damage him in the eyes of the jury.

This state gives trial judges wide latitude in determining the admissibility of photographs, even when the evidence offered by way of photograph is only marginally relevant. *Patel v. State* (1989), Ind., 533 N.E.2d 580, 584. Relevancy is determined by whether a witness would be permitted to describe verbally what the photograph depicts. *Talley v. State* (1980), Ind.App., 400 N.E.2d 1167, 1170, *trans. denied.* We observe that a considerable amount of testimony was offered by the State without objection, and from the defendant himself concerning his knowledge of, interest in, sale and purchase of and use of various guns. Photographs depicting the extent of White's interest and possession of guns were admissible as well. *Id.* Similarly, the witnesses testified to White's consumption of canned beer on the day of the shooting. Photographs displaying empty beer cans, though marginally relevant, were also proper.

## V.

White claims the prosecuting attorney's conduct during the trial was improper as was his final summation before the jury. White refers specifically to the testimony of Karen Chesterfield relating to the paternity dispute between White and the decedent. White did not object to this testimony at trial but proceeded to cross-examine the witness on the subject and testified himself about his relationships with Chesterfield and the decedent. Likewise, no objections were made to the prosecutor's comments during final argument. If no objection is made at the time the comments are made or testimony is elicited, the issue is waived. *Tabor v. State* (1984), Ind., 461 N.E.2d 118, 123; *Wilson v. State* (1987), Ind., 511 N.E.2d 1014, 1017; *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1125.

White acknowledges that no objections were voiced during the State's closing argument but maintains, nonetheless, that the prosecutor's improper comments placed him in grave peril and deprived him of a fair trial. Assuming this is an effort by White to argue fundamental error, we will address the merits of his contentions.

■ In reviewing a charge of prosecutorial misconduct, this court first determines whether there was misconduct by the prosecutor, and second, considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position of grave peril is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evince a deliberate attempt to improperly prejudice the defendant. *Id.*

■ White contends that the prosecuting attorney improperly commented on the recoil factor of a shooting gun, a fact which was not placed in issue through testimony. Our review of the testimony reveals that at least two witnesses talked about the kickback which occurred from the firing of this particular gun. David Girton, the former police officer who witnessed the shooting, reported that he saw the gun flash, heard the discharge and then saw White's arm in a state of recoil. He went on to explain that by the term "recoil," he was referring to White's arm in an upward motion. Later, on cross-examination, Girton explained

that his statement White was recoiling from the discharge when Girton saw him with the gun was based upon his experience and knowledge of firearms.

Danny Wilkerson, a friend of White who fired the gun earlier in the day, testified that the gun had a "pretty powerful recoil" for a .357 magnum revolver. Wilkerson did not have difficulty shooting or aiming the gun as long as he used both hands. Wilkerson stated that it was not a gun which one would want to shoot with just one hand; if one did attempt to shoot the gun with only one hand, it might jump out of his hand or "come back".

■ The prosecutor's comments to the effect that one has to have a grip on a gun of this type, "talk to the ones that have," do not diverge from the testimony of record recited above. It is within the range of proper argument to state and discuss the evidence and all reasonable inferences which may be drawn therefrom as long as the prosecutor is not implying a personal knowledge independent of the facts. *Bell v. State* (1977), 267 Ind. 1, 366 N.E.2d 1156; *Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1064, *cert. denied* (1988), —— U.S. ——, 109 S.Ct. 330, 102 L.Ed.2d 347.

■ White next argues the prosecutor improperly informed the jury that the defense had requested the giving of an instruction on the lesser included offense of reckless homicide rather than referring to the instruction as the court's instruction. While we agree the prosecutor's reference to the "defense's instruction" was probably unnecessary, it could hardly be said to have been prejudicial at the time the reference was made. Defense counsel had already spent some time arguing the merits of a reckless homicide verdict. The jury would likely have inferred at some point that the instruction on reckless homicide was urged by the defense.

■ White maintains the prosecutor erroneously and improperly argued that the jury should not find White guilty of the crime of reckless homicide because it was a class C felony which did not carry a great enough sentence rather than arguing the

evidence did not support such a finding. Taken out of context, the prosecutor's comments are these:

> . . . "Included within the crime of murder is the offense of reckless homicide which is defined by statute as follows, A person who recklessly kills another human being commits reckless homicide a C felony." A C felony. If you are convicted of forgery you are convicted of a C felony. but she wants you as one of her alternatives to find that the defendant is no more guilty than a person who goes out and just signs their name to somebody's check and document and commits the crime of forgery in the State of Indiana. Not only is that crazy, that would be one of the most (inaudible) justice there could ever be. We have shown that he was not that drunk, we have proved that he had the physical skills to have the intent.

Even if we assume the prosecutor's comments were improper, we are not convinced that the comments had such a persuasive effect upon the jury as to warrant reversal. As we have indicated, the predominant question in the case, upon which both sides directed the testimony, was whether White was so intoxicated as to be incapable of knowing the consequences of his actions. The defense brought in expert witnesses to testify to the extent of White's intoxication as evidenced by the breathalyzer test results and also offered evidence from individuals who had been with White throughout the day who could attest to the quantity of alcohol White had consumed. Although the defense did ask the jury to draw the inference that White's conduct was merely reckless from the fact that White carried the gun into a crowded bar and from the absence of any evidence as to how White got the gun into position to shoot, all of the testimony of the witnesses, including that of David Girton who saw the gun being fired by White, supports the inference that it was White's conscious objective to shoot Workman. No witness observed White engaged in conduct, at the time of the shooting, from which a plain, conscious disregard of the harm which might result could be inferred. Thus, the evidence was not close on the level of cul-

pability entertained by White at the time of the offense, and the prosecutor's remarks about the relative seriousness of the crimes of murder and reckless homicide likely had a minimal effect, if any, upon the jury's verdict.

White also contends the prosecutor engaged in misconduct by bringing a ten-pound bag of potatoes into the courtroom and suggesting that the lifting of ten pounds of potatoes somehow equates with the firing of a gun. As a general rule, only exhibits which are properly admitted into evidence may be shown to the jury during final arguments. *See, e.g., Radford v. State* (1984), Ind., 468 N.E.2d 219, 221. However, in this case there was evidence offered by the State from which the jury could have inferred that White pulled the trigger without cocking the gun, thereby displacing ten and one-half pounds of resistance. Hence, the prosecutor's use of the exhibit was illustrative of the resistance necessarily experienced by White in firing the gun in that manner. In light of the fact that a bag of potatoes is not, of itself, inherently prejudicial, we cannot say that White's defense was damaged in any way by the use of the potatoes.

Finally, White insists that the prosecutor improperly implied that a verdict in White's favor would set a trend in Greene County with respect to murder convictions. The prosecutor remarked as follows:

> ... Greene County seems to have a reputation, many people make jokes about the fact that Greene County is the place where you can go and commit murder well that is what you people are here to decide today. ... If you come back with a not guilty, then what you are doing is telling people that hey it is certainly okay to go out and get drunk out of your mind and blow somebody away as long as you get drunk enough and don't remember anything about it or you say you don't remember anything about it then that is okay you can do that in Greene County. ... It is up to you to start setting a trend in Greene County.
> ...

As our supreme court has observed, it is the prosecutor's duty and role to present a persuasive final argument. *Mahla v. State* (1986), Ind., 496 N.E.2d 568, 572. The law perceives nothing unfair or prejudicial about permitting the State to argue its side of the case in such a manner so long as the State's comments are reasonably calculated to sway the jury to the State's point of view in light of the evidence adduced at trial and so long as the prosecution makes no deliberate distortions or improper comments. *Morris v. State* (1979), 270 Ind. 245, 384 N.E.2d 1022. It is proper to remark on the public demand for a conviction, the jury's power to set moral standards, and the people's right to expect the jury to remove a defendant from society. *Smith v. State* (1972), 258 Ind. 594, 283 N.E.2d 365.

Nonetheless, we agree with White that the prosecutor's remark urging the jury to set a trend is misleading, as each jury must make a decision solely upon the evidence before it. *Cf., Clark v. State* (1976), 264 Ind. 524, 348 N.E.2d 27, *cert. denied* (1978), 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711. Yet, in context, it is apparent that the prosecutor was directing the jury's attention to the broader question created by a defense of voluntary intoxication—whether, and under what circumstances, a criminal defendant who is unwilling to conform his conduct to the requirements of the law because of a physical condition which is self-induced should be relieved of responsibility for his actions. Where, as in this state, the issue of intent becomes one of capacity, we believe it appropriate to argue the matter of accountability. In Indiana, it is proper to argue the law as well as the facts. *Fassoth v. State* (1988), Ind., 525 N.E.2d 318, 324. Consequently, while we do not approve of the manner in which the prosecutor presented his thoughts, we are not persuaded the comment was designed to obtain a verdict of guilt based upon emotion alone, rather than issues raised by the evidence.

We note that the prosecutor prefaced these remarks by urging the jury members to base their decision upon the evidence as they heard it, and followed the remark at issue with an appeal for a murder conviction because the evidence warranted it.

Moreover, the prosecution's showing on the element of intent was not a weak one; the State established that White had no apparent difficulty functioning physically and had the presence of mind to call the officers by name, ask about the charges to be filed, request a breathalyzer test and inquire about the victim's condition. Additionally, we observe that the court instructed the jury to base its decision solely upon the evidence, and to disregard the unsworn statements of counsel. Under these circumstances, we cannot conclude that the singular remark about setting a trend was so misleading as to move the jury to act in disregard of the evidence and the court's instructions.

In sum, we are not persuaded that the actions of the prosecuting attorney necessitate a new trial.

## VI.

 Finally, White contends a sentence of fifty years is manifestly unreasonable in light of the evidence of mitigating factors contained in the record. He contends the trial court failed to acknowledge that he was exceptionally intoxicated at the time of the offense, that he had received an honorable discharge from the Navy after thirty-one months of service; that he was gainfully employed as a city employee for the four years preceding the offense; that the murder was not premeditated; and, that he did not flee. He also points to the trial court's consideration as aggravating circumstances charges of public intoxication and carrying a handgun without a permit, for which the record shows no disposition, and his carrying of a handgun without a permit at the time of the murder, which is also not substantiated by the record.

 Within the parameters of the applicable sentencing statutes, the trial court is vested with wide discretion to determine whether the presumptive sentence will be enhanced because of aggravating factors involving the particular defendant and crime. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905. Thus, a trial court may, upon consideration of the relevant facts and information, enhance the presumptive sentence; however, the record under such circumstances must demon-

strate that the determination was based upon the consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved, and the relation of the sentence imposed to the objectives which will be served by that sentence. *Id.* The statutory factors that may be considered as aggravating circumstances serve as guidelines but do not limit the matters which a judge may consider when determining what sentence to impose. *Guenther v. State* (1986), Ind., 501 N.E.2d 1071, 1072. Only one valid aggravating factor need be shown to sustain the enhancement of a presumptive sentence. *Id.*

As White acknowledges, the presumptive sentence in Indiana for murder is forty years with not more than twenty years added in aggravation. IND.CODE 35–50–2–3. In imposing the fifty-year sentence, the trial court found that White was remorseful and that his remorse was a mitigating factor outweighed by aggravating circumstances: White's criminal record; his fugitive status at the time of the crime; the danger to others occasioned by his carrying and firing a gun in a public place; his inability to compensate or make restitution to the victim's family; and, his refusal, though he is not uneducated and able to discern right from wrong, to explain why he took another life without reason.

Where, as here, the trial court has found multiple circumstances in aggravation, we are not able to attribute any significance to the trial court's error in assessing the disposition of certain crimes, particularly since White's criminal record discloses four other convictions. Furthermore, our courts have recognized that criminal activity not reduced to conviction may be taken into account as an aggravating factor. *Floyd v. State* (1987), Ind., 503 N.E.2d 390, 394.

 Neither do we find reason for re-evaluation in the trial court's treatment of mitigating circumstances. While a trial judge may not ignore facts in the record which would mitigate the offense, the judge need not explain why allegedly mitigating circumstances argued by a defendant were not used by the court to mitigate the offense, particularly when an examination of the underlying record shows the highly disputed nature of the mitigating

factors. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254. Voluntary intoxication need not be viewed as a mitigating factor, *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1094, and neither need be the fact that White was employed for a period of time before the crime when the record supports the conclusion that his termination was due to excessive absenteeism occasioned by his drinking habits.

The sentence imposed here is well within the statutory range. The trial court's recitation of the factors affecting its sentencing determination shows the judge considered both the nature of the offense and offender. We conclude the trial court acted within the bounds of its discretion in balancing the mitigating and aggravating circumstances as it did. No reasonable person would find the sentence imposed to be inappropriate.

Judgment affirmed.

BAKER and SULLIVAN, JJ., concur.