Terrence MILLER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 09A02–0812–CR–1133.

Court of Appeals of Indiana.

Oct. 30, 2009.

Transfer Denied Jan. 14, 2010.

Matthew D. Barrett, Matthew D. Barrett, P.C., Logansport, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Terrence Miller appeals his conviction of armed robbery, a Class B felony, and his sentence of eighteen years in the Department of Correction. He raises four issues, but we find one dispositive: whether the trial court erred when it allowed the State to use as a demonstrative aid in closing argument a YouTube video that did not reflect the facts of Miller's case. We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

On November 8, 2007, Scherry Gellinger was working at Wedge's Liquor Store in Cass County when Miller and Carl Stafford, his father, robbed her at gunpoint. Miller and Stafford entered the liquor store while four other customers were there. They picked out some bottles of liquor and brought them to the counter, but then asked the cashier to void the sale as they were going to make additional selections. Gellinger voided the sale and retrieved the Kool and Newport cigarettes Miller requested. While Miller and Stafford walked around the store, the other customers checked out and left.

Miller returned to the counter with another bottle of alcohol, and Gellinger rang up the sale. Miller was standing three feet from Gellinger as she rang up the items and placed the liquor and cigarettes in a bag. Miller pointed a shotgun at her face and told her not to move or he would shoot. He ordered Gellinger to lie on the floor. Miller held the gun on Gellinger and made his way around the counter. Miller struggled to open the cash register and ordered Gellinger to open it. Just then, Miller was able to open the drawer, and Gellinger heard the cash handles flip up and heard a sack rattle. Miller told Gellinger he was leaving and she should not look or he would shoot. Gellinger heard the door close and a few seconds later she heard it open again. One of Gellinger's regular customers came in and asked her what she was doing on the floor. Gellinger, who was crying and shaking, stood up, told the customer she had just been robbed, and called 911. The cash drawer was empty, and the liquor and cigarettes Gellinger rang up were gone.

---

1. Because we reverse, we need not address Miller's allegations the trial court should have granted his motion for judgment on the evidence and the trial court did not provide a sufficient sentencing statement.

Shortly before the robbery, Darla Crowe was working nearby at Security Federal Bank when two African–American men entered. One man was older and one was younger, and both were wearing black, bulky sweatshirts. Neither engaged a bank employee. Instead both went to an island counter. The younger man looked around at the vault and the tellers. Crowe felt the men's actions did not "seem right." (Tr. vol. 1 at 116.) When the older man noticed Crowe watching them, he picked up a brochure from the counter and the two quickly left. Crowe locked the bank doors and called police.

Officers who responded to Gellinger's 911 call showed her a surveillance photograph taken of the two men who had entered the bank. Gellinger identified the older man as one of the robbers but could not identify the other person because the image quality was poor. Gellinger characterized the image of the second person as "nothing more than a shadow," (App. at 107), and testified she could not see any "facial characteristics" of that person in the picture. (*Id.* at 108.)

During the robbery investigation, a police dog tracked a scent from the area in the liquor store where Miller had been, out the door, and around the back of the store to an alley, where it lost the scent. Joshua Erickson, who lived on the same alley, arrived home just before the robbery and found a silver Kia blocking the alley. Two African–American females were in the front seat. About ten minutes later Erickson saw the Kia driving down the alley with two African–American males in the back seat.

A few days after the robbery, Gellinger was shown two photo arrays. She identified Miller as the younger man who pointed the shotgun in her face and robbed her and Stafford as the older man who was with Miller during the robbery.[2]

The police distributed information about the Kia possibly being connected with the robbery, and on November 20, 2007, Logansport police pulled over a silver Kia with Illinois plates matching the description. Miller and Stafford were inside the car along with two African–American females and a child. On the floor of the back seat police found a brochure from the Security Federal Bank and a pack of Newport cigarettes.

Miller's first trial ended with a hung jury. After a second trial a jury found him guilty.

## DISCUSSION AND DECISION

### 1. *The Video*

The trial court permitted the State, over Miller's objection, to show the jury a YouTube video during closing argument. The video was created for school administrators to see "how easy it was to conceal a weapon inside clothing." (Br. of Appellee at 6.) At trial Miller's counsel described it as showing "an individual who has probably anywhere from ten to twelve, thirteen handguns that are removed from the pocket of the individual...." (Tr. vol. II at 112.) The prosecutor described it as showing a man "removing several pistols and short guns uh from his clothing and also removing a long gun towards the end of the video." (*Id.* at 114.)[3]

Experiments and demonstrations may be permitted during the trial if they will aid the court and jury. *Peterson v. State,* 514 N.E.2d 265, 270 (Ind.1987). But

---

2. She also identified Miller in court as the robber.

3. The video was not admitted as evidence and thus was not included as part of the record on appeal.

our Supreme Court has recognized experiments and demonstrations in the courtroom can "pose peril to the fairness of a trial." *Id.* In deciding whether to permit a demonstration, a court should consider such factors as the ability to make a faithful record of the drama for appeal purposes, the degree of accuracy in the recreation of the actual prior conditions, the complexity and duration of the procedures, other available means for proving the same facts, and the risk the conduct of such a procedure may pose to the fairness of the trial. *Id.*

In *Peterson*, someone shot a pharmacist during a robbery at a drug store. A witness described the killer as being taller than he. During cross-examination of the witness, defense counsel sought a court order to require the witness to stand back to back with Peterson before the jury so the jury could compare their heights. Peterson wanted to prove he was not taller than the witness and thereby convince the jury that the capacity of the witness to observe the events comprising the crime was restricted, his recall of those events was limited, and his testimony identifying Peterson as the killer was not worthy of belief. The court denied the order.

Our Supreme Court determined the ruling did not prevent the witness from being confronted before the jury with the fact that Peterson was not taller. The height of each could be proved, and then the witness recalled for such confrontation. The Court determined:

> Here unreasonableness or arbitrariness in the ruling of the trial court is not apparent, since the court could have given weight to such obvious negative considerations as the ease with which the height of the two could be shown by other means, the lack of duplication of prior conditions at the time of the crime, and the possible threat to the fairness of

the trial posed by having to take precautions for the safety of the witness during such a demonstration before the jury. *Id.*

In the case before us, by contrast, the "unreasonableness or arbitrariness in the ruling of the trial court," *id.*, is apparent under the *Peterson* standard. The video could not possibly "aid the court and jury." As the prosecutor noted before playing the video:

> this is a video off of You–Tube, *this has nothing to do with this case* .... you will see that the person has several pistols on them [sic] as well. In no way, shape, or form, are we saying that Terrence Miller had a pistol. There's absolutely no evidence that that occurred. The video is being given to you to, uh, demonstrate how easy it is to hide weapons inside bulky clothing.

(Tr. vol. 2 at 139–140.) (Emphasis supplied.) On appeal the State concedes the prosecutor was "not suggesting that the video was connected to this case or intended to depict the same events that occurred in this case." (Br. of Appellee at 17–18.) The State goes on to note Miller's "theory of the defense was one of mistaken identity—he claimed he was not the person in the liquor store.... Therefore, the whole issue about the ability to hide weapons under clothing was ultimately unimportant." (*Id.*) We find the court and jury could not have been aided by a video demonstrating something "ultimately unimportant" that "has nothing to do with this case." (*Id.* at 19.)

Nor do the other *Peterson* factors justify the use of the video. There was no "degree of accuracy in the recreation of the actual prior conditions," *Peterson*, 514 N.E.2d at 270; the prosecutor so conceded. Whether there were "other available means for proving the same facts," *id.*, is inapplicable, as the fact the robber

had a concealed weapon was not challenged at trial. But "the risk which the conduct of such a procedure may pose to the fairness of the trial," *id.*, was substantial. We agree with Miller that the video "had the effect of bringing alive the passions of the jury . . . and suggested Miller was not only the robber but that he also had multiple firearms on his person and intended to use them to cause injury or death. This caused the jury to view Miller in a negative and highly prejudicial light . . . and was irrelevant, prejudicial, and confused issues . . . ."[4] (Reply Br. of Appellant at 8.)

■■ Our courts have applied a similar analysis when demonstrative exhibits have been admitted into evidence. To be admissible, such exhibits need only be sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Myers v. State*, 887 N.E.2d 170, 185 (Ind.Ct.App.2008), *trans. denied* 898 N.E.2d 1228 (Ind.2008). The admissibility of demonstrative evidence, like all evidence, is also subject to the balancing of probative value against the danger of unfair prejudice. *Id.;* Ind. Evid. R. 403.

In *Carter v. State*, 505 N.E.2d 798 (Ind. 1987), Carter attacked the victim with a large knife with a pearl handle. Police later found in Carter's car a knife that the victim testified looked like the knife she

had seen in Carter's possession, but was not exactly the same. Carter's knife had a pearl handle and the knife the State offered did not. The trial court admitted the knife into evidence for demonstrative purposes only. Carter later testified he did not keep or carry a knife in his vehicle or on his person and he denied ever having seen the State's Exhibit. The trial court admitted the exhibit "for substantive purposes of impeachment."[5] *Id.* at 799.

Carter claimed the admission of the knife was improper in that it was irrelevant and served only to inflame the jury. The State contended admission was proper for impeachment purposes. Our Supreme Court found admitting the knife was error: "we fail to see the value of this exhibit as demonstrative evidence inasmuch as the victim stated it was not the knife she saw on Appellant in her apartment since it did not have a pearl handle."[6] *Id.* at 800.

■ We note the "general rule" that only exhibits that are properly admitted into evidence may be shown to the jury during final arguments. *White v. State*, 541 N.E.2d 541, 548 (Ind.Ct.App.1989), *trans. denied.* The State acknowledges the video was not offered or admitted as evidence: "the prosecutor used as a demonstrative aid a video that was not part of the evidence" to illustrate "that it was possible to conceal weapons inside clothing and thus that the victim's testimony to the

---

4. We will not reverse a conviction if the State can demonstrate beyond a reasonable doubt that the error complained of was harmless— that is, it did not contribute to the verdict. *Spivey v. State*, 761 N.E.2d 831, 836 (Ind. 2002). For the reasons explained above, we decline the State's invitation to hold the presentation to the jury immediately before deliberations of a concededly irrelevant but highly prejudicial video could not have contributed to the verdict. The presentation of the video was not harmless error.

5. The State wanted to show the YouTube video in rebuttal closing argument, because it anticipated Miller would argue nobody had seen a weapon on him when he entered the store. The trial court ruled the video had to be presented in the State's opening closing argument, so Miller could respond to it.

6. The Court ultimately affirmed, because the error was harmless. It noted the jury found Carter guilty of robbery as a Class C felony, and not the original charge of robbery while armed with a deadly weapon, a Class B felony.

effect was not implausible or unbelievable." (Br. of Appellee at 17.) The trial court explicitly noted the video was "not evidence in this cause of action, that's clear." (Tr. vol. 2 at 120.) The State treats the video as a "courtroom demonstration," which is admissible subject to the trial court's discretion. (Br. of Appellee at 17) (citing *Andrews v. State*, 532 N.E.2d 1159, 1165 (Ind.1989), *reh'g denied*).

*Andrews* does not support a departure in the case before us from that general rule. In *Andrews*, the State used a chart showing the dates necessary to prove Andrews's prior convictions as an aid during final argument in the habitual offender portion of trial. The court permitted use of the chart for demonstrative purposes. Andrews acknowledged any exhibit properly admitted during the trial may be used during closing, but argued the chart the State used was not an admitted exhibit and was therefore improper for use in argument.

The State characterizes *Andrews* as "reject[ing] the idea that 'only admitted exhibits may be shown to the jury, or that evidence only in its admitted form may be displayed to the jury.'" (*Id.*) (quoting *Andrews*, 532 N.E.2d at 1165)). The Court's approval of the use of the charts the State offered in *Andrews* does not permit the use of the video in the case before us. The *Andrews* Court noted "[c]harts and diagrams may be received into evidence after laying a proper foundation, *if the fact to be evidenced by the chart or diagram is itself otherwise relevant, material and competent* ... [t]hus, the use of *admitted evidence in different forms* during summation has been permitted for demonstrative purposes." 532 N.E.2d at 1165 (emphasis added).

In *Andrews*, the facts on the chart had been properly admitted during the trial. "The State was permitted to present its admitted evidence during final argument in a format it felt would aid the jury," so the trial court did not abuse its discretion in allowing use of the chart. *Id.* The video the State presented in the case before us, by contrast, was not merely a presentation, in a different format, of evidence that had already been admitted; indeed, the video presumably could not have been properly admitted into evidence in light of its conceded irrelevance and obviously prejudicial effect.

### 2. *Sufficiency of Evidence*

Miller contends the State produced insufficient evidence connecting him to the robbery. When, as here, reversal is required because of trial error, and a defendant presents a claim of insufficient evidence, an acquittal instead of a new trial is required if the proof of guilt is insufficient in light of the evidence presented at trial. *Hood v. State*, 877 N.E.2d 492, 496 (Ind.Ct.App.2007). To determine whether retrial is permissible, we address Miller's claim of insufficient evidence.

There was sufficient evidence to convict Miller, and he may therefore be retried.[7] When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). It is the factfinder's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Therefore, when confronted with conflicting evidence, we consider it most favorably to the trial court's ruling, *id.*, and affirm the con-

---

**7.** Should the State choose to retry Miller, it would be his third trial. This appeal is from his second trial; the first ended in a hung jury.

viction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence need not overcome every reasonable hypothesis of innocence. *Id.* at 147. Evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* Our task as an appellate tribunal is therefore to decide whether the facts favorable to the verdict represent substantial evidence probative of the elements of the offenses.

There was testimony Miller entered the store, pointed a gun at Gellinger, threatened to shoot her, ordered her to the floor, and took money, liquor and cigarettes. Gellinger identified Miller in court and in a photo array. Another witness identified Miller as the person leaving the store after the robbery, and Miller was stopped a few days later in a car matching the description of one seen parked behind the liquor store at the time of the robbery. We acknowledge Miller's characterization of that evidence as "problematic and speculative," (Br. of Appellant at 10), but we decline his invitation to reweigh it.

Miller's conviction is reversed.

BAKER, C.J., dissenting with separate opinion.

BARNES, J., concurring with separate opinion.

BAKER, Chief Judge, dissenting.

I respectfully dissent. Although I fully agree with the majority's conclusion that it was error for the trial court to permit the State to show the jury the video, I do not agree that it was reversible error. Miller's defense was mistaken identity—he argued that he was not the person in the liquor store. As the State points out, Miller "did not dispute that someone was in the liquor store and pulled out a shotgun that had been concealed under that indi-

vidual's coat; he just claimed that he was not that man." Appellee's Br. p. 19. Thus, the YouTube video, which concerned a person's ability to hide weapons under his clothes, was not prejudicial to Miller. I cannot conclude that the video was so inflammatory that it would have altered the way in which the jury viewed Miller and the case as a whole, and given that the video was irrelevant to Miller's defense, I can only conclude that the trial court's decision to permit the State to show the video to the jury was harmless error.

I have reviewed Miller's remaining three arguments—improper denial of his motion for judgment on the evidence, insufficient evidence, and improper sentencing statement—and I do not believe he is entitled to relief on any of those grounds.

Therefore, I would affirm.

BARNES, Judge, concurring.

I concur here because I believe that the introduction of the video was reversible error and not harmless. I acknowledge Judge Baker's stance that misidentification was the primary or even sole defense presented here and that the video is not directly relevant to that issue. The jury trial process, however, is supposed to be one which is fair to both the State and the defendant.

Although the ultimate question was decided by the jury, I am convinced that the video, which purported to show how weapons could be hidden under clothing, was the proverbial evidentiary harpoon that skewed the ability of the jury to fairly and impartially decide the case. The video potentially grouped Miller with a group of hypothetical "bad actors" who have special skill in hiding multiple weapons under their clothing. I am always reluctant to reverse jury verdicts, but I am never reluctant to attempt, as I view it, to ensure

fairness. I do not think Miller got a fair shake here, and I vote with Judge May to reverse.